PEOPLE v GONZALEZ
PEOPLE v GUERRA

Docket Nos. 223401, 223402. Submitted January 15, 2003, at Detroit. Decided April 8, 2003, at 9:10 A.M. Leave to appeal sought.

Israel J. Gonzalez, a member of the Spanish Cobras gang, was convicted in a joint jury trial in Genesee Circuit Court, Judith A. Fullerton, J., of criminal enterprise (racketeering), MCL 750.159i(1); and soliciting a person to possess with intent to deliver less than fifty grams of cocaine, MCL 333.7407a(2). The defendant appealed, arguing that the trial court erred in admitting evidence regarding the criminal activities of other persons, that the trial court abused its discretion in using the judicial sentencing guidelines in sentencing the defendant to imprisonment, that the trial court erred in imposing consecutive sentences regarding his solicitation and racketeering convictions, and that the trial court erred by imposing disproportionate sentences for solicitation and racketeering. Docket No. 223401.

David A. Guerra, a member of the Spanish Cobras gang, was convicted along with Gonzalez in the joint jury trial of racketeering, MCL 750.159i(1); possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); maintaining a drug house, MCL 333.7405(1)(d); and possession of a firearm during the commission of a felony; MCL 750.227b. The defendant appealed, arguing that the trial court erred in admitting certain evidence, that the prosecutor improperly introduced evidence without an adequate foundation, that the trial court abused its discretion in not allowing the defendant to impeach a witness with evidence of a plea agreement, that the trial court abused its discretion in using the judicial sentencing guidelines in sentencing the defendant to imprisonment, that the trial court erred in denying the defendant's motion to suppress evidence, and that the trial court erred in refusing to instruct the jury that the trial court did not have jurisdiction over a predicate offense. Docket No. 223402. The appeal was consolidated with the appeal in the case involving Gonzalez.

The Court of Appeals held:

1. The trial court did not abuse its discretion in admitting evidence regarding the criminal activities of other persons, including

other Spanish Cobra gang members, because the evidence tended to show that the defendants were part of an enterprise (the Spanish Cobras), and that the Spanish Cobras were engaged in a pattern of criminal activity. Thus, the evidence was admissible to establish elements of the racketeering charges against the defendants.

2. The trial court did not abuse its discretion in admitting evidence of an assault allegedly ordered by Guerra because this evidence demonstrated Guerra's leadership role and participation in the Spanish Cobras.

3. The prosecutor did not commit misconduct with regard to Guerra by eliciting names of other gang members through the testimony of a police officer to establish that the officer was a gang expert, because the evidence was introduced on the basis of the officer's declared status as an expert witness regarding gangs.

4. There was no error requiring reversal, nor was it an abuse of the trial court's discretion, to prohibit Guerra from impeaching a witness with evidence of the witness's plea agreement, because Guerra called the witness and elicited the damaging testimony in the first place.

5. Guerra's argument that the trial court improperly instructed the jury that it could consider all relevant evidence introduced at trial, including similar-acts evidence, with respect to the intent element of possession with intent to deliver cocaine failed in light of the fact that there was other evidence sufficient to support his conviction.

6. The trial court did not abuse its discretion in using the judicial sentencing guidelines rather than the legislative sentencing guidelines in determining the defendants' sentences, because the legislative guidelines only apply to felonies committed after January 1, 1999, MCL 769.34(2), and the offenses of which the defendants were convicted occurred before January 1, 1999. With respect to the one offense that Gonzalez was charged with and that possibly occurred after January 1, 1999, any error was harmless because the trial court would have had compelling reasons to depart from the legislative guidelines had those guidelines been used.

7. The trial court did not err with regard to Gonzalez by ordering consecutive sentences for his solicitation and racketeering convictions because MCL 333.7401(3) specifically authorizes consecutive sentencing for offenses involving controlled substances, including the defendant's conviction of solicitation under MCL 333.7407a(2).

8. If an habitual offender's underlying felony and criminal history demonstrate that he is unable to conform his conduct to the law, a sentence within the statutory limit is proportionate. Given his criminal record and his status as a second-offense habitual offender,

MCL 769.10, Gonzalez's sentences of thirteen years and four months to thirty years for racketeering, MCL 750.159j, and five to forty years for solicitation, MCL 333.7401(2)(a)(iv) and MCL 333.7413(2), were not disproportionate because the sentences were within the statutory limits for those offenses.

9. The trial court did not err in denying Guerra's motion to suppress evidence of drugs found in his home during a search warrant, because the evidence had previously been observed in plain view by police officers who conducted a protective sweep of the home incident to Guerra's arrest. Thus, it was proper to list this evidence on the request for a search warrant, and the evidence was properly admitted at trial.

10. Guerra's argument that the trial court should have instructed the jury that the trial court lacked jurisdiction over a predicate offense that occurred when he was a juvenile, MCL 712A.4, was moot because the jury did not find him guilty of that offense.

Affirmed.

WHITE, P.J., concurring, stated that she agreed with the result reached by the majority but wrote separately to note that the trial court erred in refusing to allow Guerra to impeach a witness with her plea agreement, but that this error did not affect the outcome of the trial. Furthermore, there was no error requiring reversal regarding the admission of similar-acts evidence because Guerra did not request a limiting instruction. With regard to Guerra's motion to suppress, although the initial search was not permissible as a protective sweep, the drug evidence was observed in plain view and the denial of the motion should be affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, *Timothy J. Cassady*, Chief, Research, Training, and Appeals, and *Michael A. Tesner*, Assistant Prosecuting Attorney, for the people.

*Patrick K. Ehlmann* for Israel J. Gonzalez.

*Neil C. Szabo* for David A. Guerra.

Before: WHITE, P.J. and KELLY and R. S. GRIBBS,* JJ.

KELLY, J. In these consolidated appeals from a joint jury trial, defendants Israel J. Gonzalez (Docket No. 223401) and David A. Guerra (Docket No. 223402) appeal as of right.

Defendant Gonzalez appeals his convictions of operating a criminal enterprise (racketeering),[1] MCL 750.159i(1); and soliciting a person to possess with intent to deliver less than fifty grams of cocaine, MCL 333.7407a(2). The trial court sentenced defendant Gonzalez as a second-offense habitual offender, MCL 769.10, to consecutive prison terms of thirteen years and four months to thirty years for the racketeering conviction, and five to forty years for the soliciting conviction.

Defendant Guerra appeals his convictions of racketeering,[2] MCL 750.159i(1); possession with intent to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); maintaining a drug house, MCL 333.7405(1)(d); and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant Guerra to thirteen years and four months to twenty years in prison for the racketeering conviction, eight to twenty years in prison for the conviction of possession with intent to deliver cocaine, one year and four months to two years in prison for the conviction of maintaining a drug house, and two years for the felony-firearm conviction. The

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] The jury found defendant Gonzalez guilty of eleven of the fourteen crimes listed under the racketeering charge on the felony information.

[2] The jury found defendant Guerra guilty of three of the seven crimes listed under the racketeering charge on the felony information.

sentences for racketeering and maintaining a drug house run concurrently; the other sentences run consecutively.

We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

A Crime Area Target Team of the Flint Police Department, which had been investigating gang activity for several years, discovered that the Spanish Cobras, a gang originating in Chicago, had been active in Flint since the early 1990s. The Spanish Cobras were primarily drug traffickers, but also committed larcenies, burglaries, thefts, extortion, fencing of stolen property, and assaults.

As part of an investigation of the Spanish Cobras, Michigan State Police Trooper Dale Girke made several undercover drug transactions to discover the drug source. Some of these transactions were surveilled by Flint police officers, who ultimately searched Jose Diaz's home finding a safe containing $3,600. Marked bills from the drug transactions with Trooper Girke were also traced to Diaz. In March 1998, Flint police executed a search warrant at Diaz's home where they found firearms and various items exhibiting gang colors and symbols, as well as photographs of gang members, including defendants, wearing gang paraphernalia and making gang signs.

In June 1998, Flint police officers executed felony arrest warrants regarding eleven individuals, including defendant Guerra. During the execution of defendant Guerra's arrest warrant, Lieutenant Gary Hagler approached defendant Guerra's house and saw him run from the front door. Defendant Guerra did not

run straight for the back door, but ran through other rooms of the house. He was arrested on the back patio. During what the prosecutor argues was a protective sweep of the house, officers observed marijuana. On the basis of this observation and other information, the police obtained a search warrant. Pursuant to the search warrant, police seized two bags containing over ten grams of cocaine, a nine-millimeter, semiautomatic pistol, a quilt with gang symbols and colors, other gang-related material and photographs, and drug paraphernalia.

Defendants, as well as three other individuals,[3] were charged with racketeering, MCL 750.159i(1), in connection with their alleged membership and participation in the illegal activities of the Spanish Cobras.

## II. EVIDENTIARY ISSUES

### A. STANDARD OF REVIEW AND GENERALLY APPLICABLE LAW

The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *People v Snider*, 239 Mich App 393, 419; 608 NW2d 502 (2000). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made. *Id.* A decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). Decisions regarding the admission of evidence that

---

[3] Before trial, the three individuals entered guilty pleas and testified at trial.

involve a preliminary question of law, such as the interpretation of a rule of evidence, are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Generally, all relevant evidence is admissible. MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. A determination of the prejudicial effect of evidence is " 'best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony' by the trial judge." *People v Bahoda*, 448 Mich 261, 291; 531 NW2d 659 (1995), quoting *People v VanderVliet*, 444 Mich 52, 81; 508 NW2d 114 (1993).

### B. CRIMINAL ACTIVITIES OF OTHERS

Defendants first argue that the trial court abused its discretion in admitting evidence concerning the criminal activities of others. We disagree.

Defendants were convicted pursuant to MCL 750.159i(1): "A person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." MCL 750.159f(a) defines "enterprise" as "an individual, sole proprietorship, partnership, corporation, lim-

ited liability company, trust, union, association, governmental unit, or other legal entity or a group or persons associated in fact although not a legal entity. Enterprise includes illicit as well as licit enterprises." MCL 750.159g defines "racketeering," in relevant part, as follows:

> As used in this chapter, "racketeering" means committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain, involving any of the following:
>
> *      *      *
>
> (c) A felony violation of part 74 or section 17766a of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461 and 333.7766a, concerning controlled substances or androgenic anabolic steroids.
>
> *      *      *
>
> (r) A violation of section 213, concerning extortion.
>
> *      *      *
>
> (ff) A violation of section 529, 529a, 530, 531, concerning robbery.
> (gg) A felony violation of section 535, 535a, 536a, concerning stolen, embezzled, or converted property.

MCL 750.159f(c) defines a "pattern of racketeering activity" as follows:

> "Pattern of racketeering activity" means not less than 2 incidents of racketeering to which all of the following characteristics apply:
> (i) The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.

(ii) The incidents amount to or pose a threat of continued criminal activity.

(iii) At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity.

The statute was intended to create state racketeering law analogous to the Racketeering Influence and Corrupt Organizations Act (RICO), 18 USC 1961 *et seq.* House Legislative Analysis, HB 4367, January 12, 1996. RICO recognizes two types of enterprises. 18 USC 1962(a)-(c). The type that applies to this case is set forth in subsection 1962(c), conducting the affairs of an enterprise through a pattern of racketeering activity. Under this subsection, the enterprise is "the instrument through which illegal activity is conducted." *United States v Chance*, 306 F3d 356, 372-373 (CA 6, 2002). To prove this type of enterprise under RICO, the government must show

1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; 2) that the members of the enterprise functioned as a continuing unit with established duties; and 3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. [*Id.*, citing *Frank v D'Ambrosi*, 4 F3d 1378, 1386 (CA 6, 1993).]

Here, the challenged evidence was relevant to establish the existence of the enterprise and the participation of its members in a pattern of criminal activity. During the execution of the search warrant at Diaz's home on March 17, 1998, police officers discovered a photo album covered in green and black, the

Spanish Cobras' colors. On the front of the album was Diaz's photograph cut in a diamond shape, a Spanish Cobras symbol. The album contained photographs of Diaz, defendants, and others making gang signs. This evidence tended to show that defendants were part of the enterprise known as the Spanish Cobras. The photo album was, therefore, relevant to show the existence of the Spanish Cobras and defendants' membership therein. Regarding the evidence of weapons found in the home, both defendants were seen possessing firearms and defendant Guerra was charged with felony-firearm. Therefore, this evidence was also relevant.

The testimony of Trooper Girke regarding drug transactions was relevant to show a pattern of the Spanish Cobras' criminal activity. Working undercover, Trooper Girke acted as a buyer in three drug transactions with Mary Parrish. In two of the transactions, the vehicle involved belonged to Diaz and was followed back to Diaz's home after the sale. In addition, some of the money used by Trooper Girke was traced to Diaz. Because other evidence had already been admitted that tended to establish that Diaz was a member and leader of the Spanish Cobras, this additional evidence tended to show that the Spanish Cobras was an organization involved in the street sale of cocaine. Thus, it was admissible to establish an element of racketeering.

Defendant Gonzalez did not object to the testimony of Officer David Forysteck, Bethany Carter, and Ryan Pinkston. Nonetheless, this testimony also tended to show that the Spanish Cobras were an enterprise involved in drug trafficking and violence. Given the other evidence that established the existence of the

Spanish Cobras and their activities, no plain error affecting defendants' substantial rights occurred when the jury heard this testimony. *People v Pesquera*, 244 Mich App 305, 316; 625 NW2d 407 (2001), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### C. ASSAULT

Defendant Guerra next argues that the trial court abused its discretion in admitting evidence of an assault that was allegedly ordered by him. We disagree.

The trial court did not err in admitting the evidence that defendant Guerra ordered another Spanish Cobra member to assault Ryan Pinkston. This evidence tended to demonstrate defendant's leadership role in the Spanish Cobras. The evidence was material in that defendant's participation in the affairs of the Spanish Cobras was at issue during his trial. It was also probative, making his leadership in the Spanish Cobras more probable.

### D. GANG AFFILIATION

Defendant Guerra next argues that the prosecutor improperly introduced evidence of gang affiliation without an adequate foundation. We disagree.

To avoid forfeiture of an unpreserved claim of prosecutorial misconduct, defendant must show a plain error affecting his substantial rights. *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002). "Issues of prosecutorial misconduct are decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the pros-

ecutor's remarks in context." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999).

Specifically, defendant Guerra argues that the prosecutor improperly elicited the testimony of Lieutenant Hagler regarding names of other gang members whose identities were derived from hearsay and gang profiles. Defendant Guerra argues that the purpose of admitting this evidence was to establish that Lieutenant Hagler was a gang expert. We find that the challenged conduct did not constitute plain error because the prosecutor introduced the evidence on the basis of Lieutenant Hagler's declared status as an expert witness in the area of street-gang investigation and practices. Even if it was plain error, it could not have affected defendant Guerra's substantial rights because the complained of conduct occurred during a small portion of the direct examination of one witness and did not infect the entire trial.

### E. PLEA AGREEMENT

Defendant Guerra next argues that the trial court abused its discretion in not allowing him to impeach witness Mary Parrish with evidence of her plea agreement. We disagree.

Defendant Guerra called Parrish in his case-in-chief, apparently to mitigate the testimony of a prosecution witness. Defendant now argues that Parrish's agreement with the prosecutor to give truthful testimony in exchange for a more lenient sentence was admissible to show her bias toward the prosecution. However, we note that defense counsel first elicited Parrish's testimony that defendant had threatened her.

The prosecution elicited further testimony about this matter on cross-examination.

While a witness's credibility may be attacked by the party calling the witness, MRE 607, defendant was attempting to impeach testimony that he initially elicited from Parrish. "Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence, defendant has waived appellate review of this issue." *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999). Regardless of this waiver, though it may be error requiring reversal to exclude evidence of a prosecution witness's plea agreement on the basis of the right of confrontation, *People v Mumford*, 183 Mich App 149, 154; 455 NW2d 41 (1990), there is no such error here because defense counsel called Parrish to testify and elicited her testimony about defendant Guerra's threat. Therefore, the trial court did not abuse its discretion in denying defendant Guerra's request to present the fact that Parrish was offered a plea agreement by the prosecution.

### F. SIMILAR ACTS

Defendant Guerra next argues that the trial court abused its discretion in "allowing the jury to consider similar acts evidence for an improper purpose without sufficient notice to the defendant." We disagree.

To begin with, we note that defendant Guerra did not object to the *admission* of similar-acts evidence, nor does he argue on appeal that the evidence was improperly admitted. Rather, he argues that the trial court, in response to the jury's inquiry, improperly instructed the jury that it could "consider all the rele-

vant evidence introduced during the course of this trial on the element of intent in order to determine whether the possession of cocaine . . . was possession with intent to deliver cocaine."[4] Defendant Guerra does not contest that the evidence was properly considered in relation to his racketeering charge. Rather, he argues that the evidence should not have been considered in regard to the charge of possession with intent to deliver less than fifty grams of cocaine. Thus, the scope of our review does not include whether the evidence was properly admitted under MRE 404(b). Our inquiry is instead limited to whether the trial court properly instructed the jury.

To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates. MCR 2.515(C). Because the alleged error was not properly preserved,[5] we review this issue for plain error affecting the defendant's substantial rights. *People v Knapp*, 244 Mich App 361, 375; 624 NW2d 227 (2001), citing *Carines, supra* at 766-767. This Court reviews jury instructions in their entirety to determine whether there is error requiring reversal. *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). We will not reverse a conviction if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.*

The elements of possession of less than fifty grams of cocaine with intent to deliver are: "(1) that the recovered substance is cocaine, (2) that the cocaine is in a mixture weighing less than fifty grams, (3) that

---

[4] This instruction was merely a reiteration of the instruction provided before jury deliberation began.

[5] Defense counsel objected after the jury was excused and deliberations commenced.

defendant was not authorized to possess the substance, and (4) that defendant knowingly possessed the cocaine with intent to deliver." *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). "Actual delivery is not required to prove intent to deliver." *People v Fetterley*, 229 Mich App 511, 517; 583 NW2d 199 (1998). "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *Id.* at 517-518 (citations omitted). "Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence, just as it can be established by direct evidence." *Wolfe, supra* at 526.

In this case, Sergeant Harold Payer testified that the amount of cocaine found in defendant Guerra's home, when considered with other confiscated items such as the sifter containing cocaine residue, a baggie containing cocaine, and weapons, led him to believe that defendant Guerra intended to deliver the cocaine, not merely possess it. This evidence alone was sufficient to support defendant Guerra's conviction. Therefore, the alleged instructional error did not affect defendant Guerra's substantial rights.

### III. SENTENCING ISSUES

#### A. SENTENCING GUIDELINES

Defendants next argue that the trial court abused its discretion in using the judicial rather than the legislative sentencing guidelines in formulating their sentences. We disagree.

Generally, appellate review of sentencing under the judicial sentencing guidelines is limited to whether the sentencing court abused it discretion. *Fetterley*, *supra* at 525. A sentencing court abuses its discretion when it violates the principle of proportionality, which requires that a sentence be proportionate to the seriousness of the crime and the defendant's record. *People v Milbourn*, 435 Mich 630, 635-636, 654; 461 NW2d 1 (1990); *People v Bennett*, 241 Mich App 511, 515; 616 NW2d 703 (2000).

MCL 769.34(1) provides that the judicial sentencing guidelines "shall not apply to felonies . . . committed on or after January 1, 1999." MCL 769.34(2) provides that the sentencing guidelines promulgated by the Legislature apply to felonies "committed on or after January 1, 1999." *People v Reynolds*, 240 Mich App 250, 254; 611 NW2d 316 (2000).

The trial court did not err in applying the judicial guidelines because the offenses of which defendants were convicted occurred before January 1, 1999. Defendant Guerra was not charged with any conduct that occurred after 1998. Of the alleged predicate offenses underlying the racketeering charge against defendant Gonzalez, only one occurred after January 1, 1999, intimidating a witness in March 1999. The jury did not find defendant Gonzalez guilty of this offense.

However, defendant Gonzalez also argues that the evidence supporting his solicitation conviction is ambiguous with regard to the date the offense occurred. The subject of defendant Gonzalez's solicitation first testified about a sale of marijuana that occurred in the summer of 1997. This witness was then questioned about cocaine solicitation, to which

the witness responded that there was "just one inci-
dent." The exchange continued:

*Q.* When was that?

*A.* Not too long after that, probably in the wintertime
after that.

*Q.* And would that put it one side or the other of New
Year's, if you know?

*A.* Not exactly sure.

*Q.* So that would have been either just—would—would it
be fair to say winter can be either side of New Year's.

*A.* Yes.

*Q.* It would be either the late end of '97 or the beginning
of '98.

*A.* Well, that—that it was—it had—I think it was in the
winter of '98—

*Q.* Okay—

*A.* —it was probably a year after that.

*Q.* Okay.

*A.* It was awhile after that.

We agree that this testimony is ambiguous and
could be read to place the incident in the early
months of 1999. However, even if the offense
occurred after January 1, 1999, any error in applying
the judicial guidelines was harmless. The trial court
stated that it would have found substantial and com-
pelling reasons to depart from the legislative guide-
lines if they had been applied. The court noted that
justification for this departure was found in defendant
Gonzalez's criminal history. Furthermore, the jury
found him guilty of eleven of fourteen predicate
offenses. Had the trial court used the legislative
guidelines, it would not have abused its discretion in
determining that these objective and verifiable factors
presented substantial and compelling reasons to de-

part from the legislative sentencing guidelines. *People v Babcock*, 250 Mich App 463, 465-468; 648 NW2d 221 (2002).

### B. DEFENDANT GONZALEZ'S CONSECUTIVE SENTENCES

Defendant Gonzalez next argues that the trial court erred in ordering consecutive sentences for his solicitation and racketeering convictions. We disagree.

Whether the trial court properly sentenced a defendant to consecutive sentences is a question of statutory interpretation that is reviewed de novo. *People v Denio*, 454 Mich 691, 698-699; 564 NW2d 13 (1997). A consecutive sentence may be imposed only if specifically authorized by law. *People v Lee*, 233 Mich App 403, 405; 592 NW2d 779 (1999).

In this case, defendant Gonzalez was convicted of soliciting Ryan Pinkston to possess less than fifty grams of cocaine with intent to deliver. MCL 333.7407a(2). "Except as otherwise provided[6] . . . a person who violates this section is guilty of a crime punishable by . . . the penalty for the crime he or she solicited, induced, or intimidated another person to commit." MCL 333.7407a(3). Possession with intent to deliver less than fifty grams of cocaine is prohibited by MCL 333.7401(2)(a)(iv). MCL 333.7401(3) prescribes consecutive sentencing for offenses involving controlled substances that are enumerated in MCL 333.7401(2)(a). *People v Spann*, 250 Mich App 527; 655 NW2d 251 (2002). Our Supreme Court has interpreted MCL 333.7401(3) to require consecutive sentencing for a defendant convicted of conspiracy to

---

[6] The parties do not argue that these exceptions are applicable to this case.

commit one of the enumerated offenses. *Denio, supra* at 691. Therefore, we find the trial court did not err in imposing consecutive sentences for these offenses.

### C. PROPORTIONALITY OF DEFENDANT GONZALEZ'S SENTENCES

Defendant Gonzalez also argues that the trial court erred in imposing a disproportionate sentence. We disagree.

As discussed above, the legislative sentencing guidelines do not apply to defendant Gonzalez's convictions. Additionally, the judicial sentencing guidelines do not apply because he was sentenced as an habitual offender. *People v Colon*, 250 Mich App 59, 65; 644 NW2d 790 (2002). This Court reviews the sentence of an habitual offender for an abuse of discretion. *Id.* at 64. "Nonetheless, '[a] sentence must be proportionate to the seriousness of the crime and the defendant's prior record. If an habitual offender's underlying felony and criminal history demonstrate that he is unable to conform his conduct to the law, a sentence within the statutory limit is proportionate.' " *Id.* at 65, quoting *People v Compeau*, 244 Mich App 595, 598-599; 625 NW2d 120 (2001) (citation omitted).

In this case, the jury found defendant Gonzalez guilty of eleven offenses predicate to racketeering, most of which involved the possession or sale of cocaine and marijuana. The evidence demonstrated that defendant Gonzalez was a leader of the Spanish Cobras and induced others to commit crimes. Moreover, defendant Gonzalez was a second-offense habitual offender, having previously been convicted of

cocaine possession. Therefore, the evidence demonstrated that he is unable to conform his conduct to the law, and sentencing him within the statutory limits was proper.

Pursuant to MCL 750.159j, defendant Gonzalez could be imprisoned for the racketeering conviction for not more than twenty years. However, as a second-offense habitual offender, MCL 769.10, he could be sentenced to a maximum term that was not more than 1½ times the longest term prescribed for the offense. Therefore, defendant Gonzalez's maximum sentence for racketeering, thirty years, is within the statutory limit. Pursuant to MCL 333.7407a(3), defendant Gonzalez could be sentenced for his solicitation conviction to the "penalty for the crime he or she solicited, induced, or intimidated another person to commit." The sentence that can be imposed for possession of less than fifty grams of cocaine with intent to deliver is not less than one year nor more than twenty years. MCL 333.7401(2)(a)(iv). Because defendant Gonzalez had previously been convicted of possession of less than twenty-five grams of cocaine, he was subject to having this sentence enhanced to "not more than twice the term authorized." MCL 333.7413(2). Therefore, the sentence the trial court imposed for this offense, five to forty years in prison, is within the statutory limit. Accordingly, we find no abuse of discretion.

IV. MOTION TO SUPPRESS

Defendant Guerra next argues that the trial court erred in denying his motion to suppress evidence found in his home. We disagree.

This Court reviews for clear error a trial court's ruling on a motion to suppress evidence. *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999). To the extent that the trial court's decision is based on an interpretation of the law, our review is de novo. *People v Kaslowski*, 239 Mich App 320, 323; 608 NW2d 539 (2000).

The right of individuals to be secure against unreasonable searches and seizures is guaranteed by both the federal and state constitutions. US Const, Am IV; Const 1963, art 1, § 11. The lawfulness of a search and seizure depends on its reasonableness. *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). Searches conducted without a warrant are unreasonable per se, unless the police conduct falls under one of several specifically established and well-delineated exceptions. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000); *Beuschlein*, *supra* at 749. Generally, items that are seized during an unlawful search or that are the indirect results of an unlawful search may not be admitted as evidence against a defendant under the exclusionary rule. *Stevens*, *supra* at 634. Two exceptions to the exclusion of evidence seized during a search without a warrant are applicable here: a search incident to a lawful arrest, *People v Toohey*, 438 Mich 265, 271 n 4; 475 NW2d 16 (1991); *People v Eaton*, 241 Mich App 459, 461-462; 617 NW2d 363 (2000), and seizures of items in plain view if the officers are lawfully in the position from which they view the item, and if the item's incriminating character is immediately apparent, *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996).

We find that the trial court did not err in denying defendant Guerra's motion to suppress. When the officers executed the arrest warrant against defendant Guerra, Lieutenant Hagler knew that Guerra was a member of the Spanish Cobras, and that Guerra sold narcotics and used guns. Lieutenant Hagler was also aware of threats made to the police by Spanish Cobra members, including defendant Guerra's cousin. Additionally, some of the arrest warrants against defendant Guerra were for violent offenses.

When Hagler approached defendant Guerra's house, he noticed defendant Guerra behind an Armorguard door. After Hagler announced his purpose and ordered defendant Guerra to comply, defendant Guerra ran in the opposite direction through the house, zigzagging through other rooms. Lieutenant Hagler entered the house and chased defendant Guerra past other people in the home, to the back door where defendant Guerra stepped outside and was apprehended.

Given these circumstances, the trial court did not err in determining that the police conduct was reasonable. Lieutenant Hagler articulated facts that would form "a reasonable belief" that there may have been individuals in defendant Guerra's home who posed a danger to the arresting officers. The officers knew that other individuals affiliated with the Spanish Cobras, including some wanted for assaultive crimes and murder, were still at large and could be hiding in defendant Guerra's home. It was reasonable to perform a protective sweep of the house, including the basement, to ensure that no individuals were hiding in the house. The officers also noted defendant Guerra's girlfriend Sandra Fierros' presence and

checked her person and the area immediately around her for firearms. While performing this protective sweep, the officers observed an ashtray containing marijuana seeds and stems on the dining-room table. In addition, the officers found a marijuana cigarette on the floor in front of a couch in the basement. Both of these items were immediately recognizable as contraband and were located in plain view. Because the officers' conduct was reasonable, it was not improper to list these items of contraband on the request for a search warrant. Accordingly, the evidence found pursuant to the warrant was admissible against defendant Guerra at trial. The trial court did not err in denying defendant Guerra's motion to suppress.

### V. JURISDICTION OVER PREDICATE JUVENILE OFFENSE

Defendant Guerra also argues that the trial court erred in refusing to instruct the jury that the trial court did not have jurisdiction over a predicate offense that occurred when defendant Guerra was a juvenile. We disagree.[7] Issues of subject-matter jurisdiction are reviewed de novo. *People v Harris*, 224 Mich App 597, 599; 569 NW2d 525 (1997). A lack of subject-matter jurisdiction cannot be waived by a party. *People v Eaton*, 184 Mich App 649, 652; 459 NW2d 86 (1990). This Court also reviews de novo claims of instructional error. *People v Hall*, 249 Mich App 262, 269; 643 NW2d 253 (2002).

---

[7] We note that this issue is somewhat oddly articulated. Although this issue is framed as whether the trial court lacked jurisdiction, defendant Guerra's argument is that the trial court improperly denied his request for a jury instruction that the trial court lacked jurisdiction over the juvenile offense. We also note that defendant Guerra did not object to the evidence of the offense when it was admitted at trial.

Defendant Guerra argues that pursuant to MCL 712A.4, the circuit court did not have jurisdiction to consider the charge of delivery of cocaine or possession with intent to deliver cocaine that occurred when he was a juvenile, absent a waiver hearing. However, this issue is moot[8] because the jury did not find defendant Guerra guilty of that offense. All the other predicate offenses, of which defendant Guerra was convicted, occurred when he was at least eighteen years old.

Defendant Guerra argues that even if the jurisdictional issue is moot, we should still address the instructional issue because "the trial court also instructed the jury that this alleged conduct may be considered when determining guilt on Count II [possession with intent to deliver less than fifty grams of cocaine]." Although the jury was permitted to consider evidence of the alleged juvenile conduct, it found that there was insufficient evidence to establish that this conduct occurred. Having found that this act was not proven beyond a reasonable doubt, it is improbable that the jury considered it in relation to Count II. Moreover, even without the evidence of defendant Guerra's juvenile act, there was ample evidence to support his conviction as discussed above. Therefore, even if the trial court erred in denying defendant Guerra's request for the jury instruction, defendant Guerra cannot show a miscarriage of justice under the "more probable than not" standard, *Carines, supra* at 774; *Lukity, supra* at 495-496.

Affirmed.

---

[8] An issue is moot where a subsequent event renders it impossible for this Court to fashion a remedy. *People v Briseno*, 211 Mich App 11, 17; 535 NW2d 559 (1995).

R. S. Gribbs, J., concurred.

White, P.J. (*concurring*). While I agree with the
result reached by the majority, I write separately
because my reasoning differs on several issues.

Regarding evidence of the criminal activities of
others, I agree that evidence concerning the album
seized from Jose Diaz's home was relevant and admissible. I find no error requiring reversal in the admission of the other evidence challenged on appeal
because I conclude that the admission of evidence of
guns found in the search was harmless, and that witness Theresa Goodman provided adequate foundation
for testimony concerning the drug transactions with
Diaz and Mary Parrish.

I agree that any error in admitting Lt. Gary Hagler's
testimony regarding various individuals' membership
in the gang did not affect the outcome of the trial.
*People v Lukity*, 460 Mich 484, 495; 596 NW2d 607
(1999).

I conclude that the trial court erred in refusing to
allow defendant Guerra to question Parrish regarding
her plea agreement. However, the error did not affect
the outcome of the trial. *Id.*

Regarding the similar-acts evidence and the jury's
consideration of the evidence in relation to the count
of possession with intent to deliver, I find no error
requiring reversal under the circumstances because
defendant Guerra did not request a limiting instruction when the evidence was admitted, and objects to
the evidence only on the basis of failure to give the
notice required by MRE 404(b).

Lastly, with regard to defendant Guerra's motion to
suppress, I conclude that the initial search was far

more expansive than is permissible as a protective sweep. *Maryland v Buie*, 494 US 325, 337; 110 S Ct 1093; 108 L Ed 2d 276 (1990); *People v Shaw*, 188 Mich App 520, 524-525; 470 NW2d 90 (1991). However, because the marijuana that formed the basis for the search warrant was observed in plain view while the officers were engaged in permissible, protective activity, I agree that the denial of the motion to suppress should be affirmed.