# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LORENZO DEJUAN HARRIS,

      Defendant-Appellant.

UNPUBLISHED
October 24, 2017

No. 332769
Wayne Circuit Court
LC No. 15-005757-01-FC

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of two counts of involuntary manslaughter, MCL 750.321, two counts of first-degree fleeing and eluding a police officer, MCL 257.602a(5), three counts of reckless driving causing serious impairment of a body function, MCL 257.626(3), and unlawfully driving away an automobile (UDAA), MCL 750.413. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 30 to 60 years' imprisonment for the involuntary manslaughter convictions and the two first-degree fleeing and eluding convictions, and 6 to 20 years' imprisonment for the reckless driving causing serious impairment of a body function convictions and the UDAA conviction. For the reasons set forth below, we affirm.

The charges against defendant arose out of a police chase that ended in a fatal collision on June 24, 2015, in Detroit, Michigan. The chase began when uniformed police officers in a marked police vehicle signaled for defendant to stop and he fled instead. Officer Fultz testified that the stop was initiated because he observed defendant waiving a semi-automatic handgun while driving.

During his flight from the police, defendant lost control of his vehicle while traveling at a high rate of speed, hitting and killing two small children playing on the sidewalk. His vehicle then left the roadway, drove up onto a residential driveway, and ripped the exterior stairs off an abandoned home. It then overturned a work van that was parked in the residential driveway, pinning three more small children up against a second home. Those three small children sustained life-threatening injuries, but survived. Defendant raises three issues on appeal. Each is addressed in turn.

## I. FAILURE TO ADMIT POLICE DEPARTMENT POLICY

Defendant first argues that the trial court erred by failing to admit into evidence the Detroit Police Department's policy directive on vehicular pursuits. Defendant submits that without the policy directive, he was unable to effectively present his defense to fleeing and eluding based on the argument that the officers were not acting in the performance of their lawful duties when they initiated the stop and pursuit. We disagree.[1]

MCL 257.602a provides, in relevant part:

> (1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police . . . officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer.

> \* \* \*

> (5) If the violation results in the death of another individual, an individual who violates subsection (1) is guilty of first-degree fleeing and eluding . . . .

Fleeing and eluding is a general intent crime. *People v Ambramski*, 257 Mich App 71, 73; 665 NW2d 501 (2003). An element of the offense is that the officer that defendant was fleeing and eluding from must have been in the lawful performance of his or her duties at the time of the alleged infraction. *People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999).

Defendant argues that the police directive shows that the officers had a duty to "evaluate the seriousness of the crime versus the risk to the public" when deciding whether to engage in pursuit, and by continuing to pursue defendant at a "high rate of speed" through a residential area, they were in breach of the policy and so not acting within their lawful duties. The trial court disagreed, finding that the police directives had no bearing on whether the officers were in lawful performance of their duties in pursuing defendant. The trial court went on to state that the police directive was relevant only to "civil liability . . . and not with regard to lawful performance of [the officers'] duties."

---

[1] This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A trial court abuses its discretion when it chooses an outcome that falls outside the principled range of outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Where a trial court's decision regarding the admissibility of evidence involves a question of law, this Court's review is de novo. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). Evidentiary errors only require reversal where, after an examination of the entire record, it appears more probable than not that the trial court's error was outcome determinative. *Burns*, 494 Mich at 110.

The trial court's ruling was not erroneous. First, as the trial court observed, defendant cites no caselaw that a police policy governs the lawfulness of a stop where a defendant is charged with fleeing and eluding. Second, defense counsel was still able to challenge the legality of the traffic stop and the ensuing police chase, on cross-examination of Officer Fultz. Specifically, defense counsel challenged Officer Fultz's testimony that he saw a gun based on the officer's admission that he had only seen defendant's car for about three seconds, from approximately 25-feet away, as it was traveling through an intersection and because the vehicle had very narrow windows thereby limiting visibility of its interior. Second, he pointed out that the other two officers in the police car did not see a gun. Finally, counsel emphasized Fultz's admission on cross-examination that, to his knowledge, no weapon was recovered from defendant or his vehicle.

Thus, defense counsel was able to effectively challenge the legality of the traffic stop by casting reasonable doubt on whether defendant actually had a semi-automatic weapon while driving his vehicle. The jury's acquittal of defendant on three weapons related charges supports this conclusion. Additionally, during deliberations, the jury submitted questions regarding whether it was lawful to "pull someone over for suspicion," and "if the police believe there is a gun in the car, are they allowed to pull you over? Is it their lawful duty if they believe?" Accordingly, it was not outside a principled range of outcomes to decline to admit the police directive where defense counsel could present an effective defense without it. The trial court did not abuse its discretion by excluding the policy directive.

Further, after a review of the entire record, nothing suggests that any error in excluding the policy directive would have been outcome determinative, especially in light of the aforementioned jury questions and the subsequent acquittal of all weapons charges. Additionally, Officer Bilingslea testified that the police car could not have traveled over 50 miles per hour because it was disabled. He also stated that although defendant's vehicle failed to stop at a stop sign during the chase, the police car did stop, and waited for traffic to clear before continuing their pursuit. He also testified that they were in the process of terminating the pursuit given defendant's speed and the danger he posed. These facts speak directly to the point that the officers were, in fact, concerned with public safety while lawfully performing their duties, contrary to defendant's claim. Therefore, even if the exclusion was erroneous, defendant would not be entitled to the requested relief.

## II. IMPROPER JURY INSTRUCTION

Defendant also argues that the trial court improperly answered two jurors' questions which resulted in the jury believing that it could convict defendant of first-degree fleeing and eluding a police officer, even if the police officers were not "behaving lawfully." We disagree.[2]

---

[2] Claims of instructional error are reviewed de novo. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "This Court reviews jury instructions in their entirety to determine whether there is error requiring reversal." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499

During deliberations, the jury submitted two questions to the trial court. The first question read, "Is it lawful to pull someone over for suspicion?" The second question read, "If police believe there is a gun in the car, are they allowed to pull you over? Is it their lawful duty if they believe?" The prosecutor argued that the appropriate response would be to instruct the jury on police-citizen investigative encounters, relying on case law that "ultimately go[es] back to *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)]." The trial court agreed, stating that "the law under *Terry* and its progeny is that the police may detain someone to investigate if they have a reasonable suspicion that criminal activity is afoot. And that is the answer I intend to give to the jury." Defense counsel objected to the instruction, arguing that there were "no facts to support that it's a reasonable interpretation of *Terry*." That instruction was, in fact, read to the jury.

The crux of defendant's argument on appeal is that the jury was not properly instructed on the legal standard for a traffic stop and appears to argue that the judge should have instructed them that the police were required to have probable cause rather than reasonable suspicion. However, while the probable cause standard applies where the stop is grounded in a traffic law violation, the reasonable suspicion standard applies where the stop is for suspected criminal behavior. *People v Kavanaugh*, ___ Mich App ___, ___; ___ NW2d ___ (2017), slip op at 3-4. Accordingly, the trial court properly instructed the jury on the legal standard for a *Terry* stop. The instruction that was given fairly presented the issues and adequately protected defendant's constitutional rights. *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003).

The United States and Michigan Constitutions protect citizens from unlawful searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v North Carolina*, ___ US ___, ___; 135 S Ct 530, 536; 190 L Ed 2d 475 (2014). Any search or seizure must be "reasonable." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). Under the Fourth Amendment, a brief investigative stop of an automobile requires a law enforcement officer to articulate a particularized and objective basis for suspecting that an individual was breaking the law. *Navarette v California*, ___ US ___, ___; 134 S Ct 1683, 1687; 188 L Ed 2d 680 (2014). In other words, a police officer must have reasonable suspicion to stop a vehicle. *Id*. Similarly, a *Terry* stop occurs when a law enforcement officer briefly detains an individual for the purpose of performing an investigatory stop. *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011), citing *Terry*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Under those circumstances, to detain an individual, the law enforcement officer must have a reasonable, articulable suspicion that criminal activity is afoot. *Barbarich*, 291 Mich App at 473. The *Terry* doctrine also applies to investigative stops of moving vehicles. *United States v Bentley*, 29 F 3d 1073, 1075 (CA 6, 1994).

---

(2003). This Court will not reverse a conviction "if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Id*.

III. PROPORTIONALITY OF SENTENCE

Finally, defendant challenges the proportionality of his sentences.[3]

This Court reviews the reasonableness of a sentence by applying the principal of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990); *People v Steanhouse,* ___ Mich ___ ; ___ NW2d ___ (2017) (Docket Nos. 152671, 152849, 152871 to 152873, and 152946 to 152948); slip op 14-15. According to the Michigan Court of Appeals in *Steanhouse*, under the *Milbourn* test, "a given sentence [could] be said to constitute an abuse of discretion if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 313 Mich App 1, 45; 880 NW2d 297 (2015) (quotation marks and citation omitted; alterations in *Steanhouse*), affirmed in part, reversed in part, ___ Mich ___ ; ___ NW2d ___ (2017) (Docket Nos. 152671, 152849, 152871 to 152873, and 152946 to 152948). The Court of Appeal's *Steanhouse* panel identified the following nonexclusive factors as relevant in determining whether a sentence was proportionate:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) other factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expression of remorse, and the defendant's potential for rehabilitation. [*Id.* at 46 (citations omitted).]

Defendant specifically contests the proportionality of his sentences for his two involuntary manslaughter convictions and his two first-degree fleeing and eluding a police officer convictions. For all four convictions, defendant's prior offense variable (PRV) score totaled 112 points, which placed him in the PRV level F, applicable for any score over 75 points. MCL 777.63; MCL 777.64. Additionally, defendant's offense variable (OV) score totaled 191 points, which placed him in the OV level VI, applicable for any score over 75 points. MCL 777.63; MCL 777.64. Accordingly, as a fourth habitual offender,[4] defendant's minimum sentencing guidelines range for the two involuntary manslaughter convictions was 62 to 228 months' imprisonment, and his minimum sentencing guidelines range for the two first-degree fleeing and eluding from a police officer convictions was 117 to 320 months' imprisonment. MCL 777.63; MCL 777.64.

---

[3] This Court reviews a trial court's imposition of upward departure sentences for an abuse of discretion. *People v Steanhouse,* ___ Mich ___ ; ___ NW2d ___ (2017) (Docket Nos. 152671, 152849, 152871 to 152873, and 152946 to 152948); slip op at 4. "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1(1990), overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011).

[4] MCL 769.12.

The trial court acknowledged the minimum sentencing guidelines ranges, nevertheless it sentenced defendant above the guidelines. Touching on the aforementioned factors listed in *Steanhouse*, the court stated that "the guidelines grid [does not] reflect[ ] the seriousness of the offense in this case." The court observed that two children lost their lives, and a third "has continuing injuries that will affect him every day of his life." Additionally, two more small children continue to suffer nightmares due to their involvement in the collision. The court also noted that defendant was on parole at the time of the offense. The trial court noted that defendant's OV score was 191 points, and the highest level of the grid "max[ed]-out" at 75 points, putting defendant's OV score at "way more than double that amount." Defendant's criminal behavior has been consistent throughout his life and he has failed multiple opportunities at probation. Accordingly, the court determined that the "guidelines grid" did not accurately reflect the seriousness of the offense committed by defendant, and that due to the advisory nature of the minimum sentencing guidelines range, a departure sentence was warranted. Defendant was subsequently sentenced to 30 to 60 years' imprisonment for the two involuntary manslaughter convictions and two first-degree fleeing and eluding a police officer convictions.

Defendant's sentences for the two involuntary manslaughter convictions exceeded the minimum sentencing guidelines range by 132 months, and his sentences for his two first-degree fleeing and eluding a police officer convictions exceeded the minimum sentencing guidelines range by 40 months. We conclude that the trial court did not abuse its discretion by upwardly departing from the sentencing guideline ranges in this case. Based on the trial court's articulated reasoning for the upward departures, defendant's sentences were proportionate to the offenses, and defendant is not entitled to resentencing.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly