*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 27, 2024

Plaintiff-Appellee,

v

No. 363493
Berrien Circuit Court
LC No. 2022-015119-FC

WALTER TERELL WOOTEN,

Defendant-Appellant.

Before: RICK, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Defendant was convicted by a jury of robbery, MCL 750.530,[1] and resisting and obstructing a police officer (R&O), MCL 750.81d(1). The jury acquitted defendant of armed robbery, MCL 750.529.[2] The trial court sentenced defendant, as a fourth-offense habitual

---

[1] MCL 750.530 provides:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

This offense is typically referred to as unarmed robbery to distinguish it from armed robbery, MCL 750.529.

[2] MCL 750.529(1) provides:

offender, MCL 769.12, to concurrent terms of 12 to 25 years' imprisonment for robbery and 3 to 15 years' imprisonment for R&O. Defendant appeals as of right, challenging the trial court's assessment of Offense Variables (OVs) 1, 2, and 3.[3] For the reasons set forth in this opinion, we vacate defendant's sentence and remand for resentencing.

## I. BACKGROUND FACTS

At about 11:30 p.m., on Wednesday, February 2, 2022, the victim was playing video games in his house shortly before he needed to leave for work. Dana Williams, who shared a mutual friend with the victim, contacted him on Snapchat. She asked whether they could hang out that evening as they had done once before at the victim's home. The victim responded that he needed to go to work soon. In fact, the victim had to clock in at 1:00 a.m. Williams did not respond to the victim; however, at about 11:45 p.m., the victim heard a knock at his front door. He asked who it was and, after hearing nothing, returned to his game. About five minutes later, the victim heard a second knock. The victim opened the door and saw Williams standing outside with defendant, whom the victim did not know. Despite the victim not inviting the pair inside, they entered and Williams introduced defendant as her friend "Dolo."

The three of them proceeded to the victim's bedroom where the victim turned off his video game.[4] Defendant asked if the victim wanted to smoke either marijuana or a Black & Mild. The victim replied that he did not smoke. Defendant asked what game the victim was playing and the victim told him.

---

A person who engages in conduct proscribed under [MCL 750.530, the robbery statute,] and who in the course of engaging in that conduct does any of the following is guilty of armed robbery:

(a) Possesses a dangerous weapon.

(b) Possesses an article used or fashioned in a manner that would cause a reasonable person to believe the article is a dangerous weapon.

(c) Represents orally or otherwise that he or she possesses a dangerous weapon.

(2) A person who violates this section is guilty of a felony punishable by imprisonment for life or for any term of years.

(3) If a violation of this section results in an aggravated assault of or serious injury to any other person, the person must be sentenced to a minimum term of imprisonment of not less than 2 years.

The felony information charged that defendant "did, in the course of committing a larceny of [an] X-Box, jewelry and other person[al] items, use force or violence against a person present, [the victim], and in the course of that conduct possessed a machete, a dangerous weapon. . . ."

[3] The prosecution has not filed a response.

[4] At the preliminary examination, the victim testified that he continued to play his game; however, he did not remember testifying that he continued to play his game.

When the victim returned to his front room to put on his shoes, he leaned over. Defendant hit the victim very hard in the back of his head from behind, knocking him down to the floor. As the victim rolled over to get up, defendant forcefully struck the victim's forehead with either his hand or with the victim's machete. The victim's machete was in a sheath in his living room and the victim assumed that defendant had taken it while the victim's back was turned. At the preliminary examination, however, the victim testified that defendant used his fist to strike him.

Regardless, thereafter, defendant pinned down the victim, pointed the machete at his chest, and told him to stop moving. Defendant asked the victim if he had any money or drugs, and the victim denied that he did. The victim later showed defendant a debit card in the victim's wallet; however, when defendant learned that that victim only had three or five dollars on the card, he threw the wallet down. Defendant inquired whether the victim had any safes, but he did not. Defendant then attempted to remove the victim's television, which was bolted to a wall. Defendant asked the victim for a toolbox, but the victim did not have one.

Williams was in the victim's bedroom looking for things to take. Williams had the victim's iPhone 11, which was password protected. Defendant made the victim tell Williams his password. And, although the victim could not recall defendant's exact words, defendant told Williams to look around to see if she could find anything.

While pointing the machete at the victim, defendant ordered him to go into another bedroom, escorting him there. Defendant had the victim against the wall. Defendant asked if the victim had any jewelry or valuables. The victim only had a stainless-steel necklace, which he was wearing. Defendant told him to take it off and took it from his hand.

Williams took the victim's car keys and unsuccessfully attempted to remove the victim's vehicle from the snow-covered driveway. Williams came in and reported that she could not get the victim's car out of his driveway.

The victim asked for his phone back to call his ride to work, indicating that he did not want that person to be harmed. Defendant told the victim something like "if he comes he's going to get cut too." Defendant did not return the victim's phone.

Defendant told the victim to stay in the bedroom until he heard the front door close. Defendant and Williams stole numerous items from the victim, including his belt, hat, socks, iPhone, necklace, machete, BB-gun, katana,[5] Xbox One gaming console, Xbox headset, four controllers, multiple Xbox One games, three Nintendo Switch games, and backpack.

The victim, however, had an additional phone secreted away. Once he enabled it, he called the police at 12:45 a.m. to report an armed robbery. He also contacted one of his friends, who used an app to locate the victim's stolen phone at Williams's apartment.

---

[5] A katana is a Japanese weapon like a sword, but thinner.

After the police arrived, paramedics also arrived. The paramedics addressed the "goose egg" on the victim's head and the cut on his hand from the machete.[6] However, the victim refused to be transported to the hospital for further medical treatment.

Officers then went to Williams's apartment. Eventually, Williams came to the door, but defendant attempted to escape out of a back window. The police pursued, and with the aid of a canine, located him hiding under a porch before arresting him.

After being advised of his rights, defendant waived them. The police recorded defendant's statement. Initially, defendant denied being at the victim's house. Defendant later claimed that the victim invited Williams and defendant to come over to the victim's house. Defendant reported that they played a video game. Williams and the victim made a $50 bet. The victim lost the bet and an argument ensued between Williams and the victim. Defendant admitted that he struck the victim with a closed fist. The victim yelled at them to get out of his house. Defendant took the victim's cell phone and Williams took a video game.

During the interview, the officer learned that additional items were taken. Defendant admitted that he also took the victim's necklace and that Williams took the victim's BB-gun. Defendant said the BB-gun was hidden under the couch in Williams's apartment and that the necklace was on a dresser in the living room.

The police found the victim's stolen items in Williams's apartment. As defendant had reported, the BB-gun was under the couch; however, the police also found the machete in the same location. And the victim's necklace was not found on a table in the living room, but in the pocket of the jeans that defendant wore during the robbery and left in Williams's apartment.

In closing argument, defense counsel stated that defendant denied using the machete. And, because the victim had the machete on his living room couch, defense counsel suggested that it was possible that the victim had cut himself. Moreover, the police failed to test the machete for DNA or fingerprints. Finally, defense counsel argued the fight that day arose from the gambling dispute, not during the course of the larceny. For these reasons, defense counsel urged the jury to find defendant not guilty.

After deliberating, the jury acquitted defendant of armed robbery, but found defendant guilty of the lesser included offense of unarmed robbery and R&O. Defendant now appeals.

---

[6] The cut on the back of the victim's left wrist was described as being a break in his skin that was not actively bleeding.

## II. ANALYSIS

Before sentencing, defense counsel prepared written challenges to the sentencing guidelines scoring.[7] Specifically, defense counsel objected to the scores for OVs 1 (aggravated use of a weapon), 3 (bodily injury requiring medical treatment), and 14 (defendant was a leader in a multiple-offender situation).[8] Regarding OV 1, defense counsel objected to a 15-point assessment, which addresses whether "the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). Defense counsel contended:

> While *the court could consider acquitted conduct* and [the victim] testified at trial to being assaulted with a machete, [defendant] challenges this testimony as being more likely than not true as [the victim] was inconsistent as when [defendant] grabbed the machete in the preliminary [examination] and in the trial and no other corroborating evidence supports [the victim's] claim. [Emphasis added.]

As to OV 3, defendant objected to a 10-point assessment, which addresses whether "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Defense counsel asserted that "[w]hile it is true that an ambulance was called to examine [the victim], he was not treated by any medical professional and had refused medical attention." For these reasons, defense counsel contended that a 5-point assessment for the victim's bodily injury, which did not require medical treatment, was appropriate. See MCL 777.33(1)(e).

At sentencing, the trial court specifically inquired of the prosecutor whether it could consider acquitted conduct in scoring OV 1. The prosecutor responded affirmatively.

Later, the court opined that the jury's acquittal may have been based on nullification or a misconception that "the machete had to cut the [victim] or that they had to believe that he pointed it at him, or used it in some fashion in order to secure the property, that's not required as an element of the offense."[9] The trial court then concluded that the proofs were significant that defendant

---

[7] Defendant's objections are not contained in the lower court file, but were included in defendant's appendix on appeal.

[8] The trial court agreed with defendant's challenge to OV 14 and its scoring is not at issue on appeal.

[9] "[A] defendant is guilty of armed robbery if he engages in conduct under MCL 750.530 and (1) he actually possesses a dangerous weapon. . . ." *People v Henry*, 315 Mich App 130, 137; 889 NW2d 1 (2016). "To constitute armed robbery the robber must be armed with an article which is in fact a dangerous weapon—a gun, knife, bludgeon, etc., or some article harmless in itself, but used or fashioned in a manner to induce the reasonable belief that the article is a dangerous weapon." *People v Parker*, 417 Mich 556, 565; 339 NW2d 455 (1983).

Consistent with M Crim JI 18.1(5), the trial court instructed that jury that "while in the course of committing the larceny, the Defendant possessed a weapon designed to be dangerous and capable

-5-

used or possessed the machete during the course of the larceny that led to the robbery conviction. Thus, the court assessed 15 points for OV 1.

After defendant was sentenced, he filed his appellate brief, challenging the scoring of OV 3 on the same grounds that he did below. As to OV 1, however, defendant complained that "[t]he court incorrectly asserted that it 'can consider acquitted conduct' " at sentencing. Doing so, defendant contends is violative of our Supreme Court's decision in *People v Beck*, 504 Mich 605, 627; 939 NW2d 213 (2019),[10] as discussed in *People v Roberts*, 506 Mich 938; 949 NW2d 455 (2020):

> On order of the Court, the application for leave to appeal the March 24, 2020 judgment of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals, VACATE the sentence for felon in possession of a firearm, and REMAND this case to the Ingham Circuit Court for resentencing. As argued by both the prosecution and defense at trial, the factual issue facing the jury in determining the defendant's guilt or innocence of the assault with intent to murder charge was whether he passed a gun to another individual, who it is undisputed then fired the gun into a crowd on a city street. The jury acquitted the defendant of this charge. As such, when the trial court assigned 25 points to Offense Variable 9, MCL 777.39(1)(b), for endangering the crowd, and when it departed upward from the recommended guidelines range in order to deter gun violence on the city's streets, it improperly sentenced the defendant based on acquitted conduct. *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019).

Defendant's argument on appeal is contrary to the position that his counsel advanced in his objections to the scoring of the guidelines below, namely, that the sentencing court "could consider acquitted conduct" in scoring the guidelines. See e.g., *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003) ("Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence, defendant has waived appellate review of this issue."). Nevertheless, because the trial court imposed defendant's sentence based on a misconception of law implicating his constitutional right to due process, we conclude that defendant is entitled to resentencing. *People v Turner*, 505 Mich 954; 936 NW2d 827 (2020) ("A sentence is invalid 'if it is based upon . . . a misconception of law . . . .' "), quoting *People v Miles*,

---

of causing death or serious injury, and/or possessed any other object capable of causing death or serious injury, that the Defendant used as a weapon."

[10] In *Beck*, the defendant was convicted of being a felon-in-possession of a firearm and felony-firearm; however, he was acquitted of open murder, carrying a firearm with unlawful intent, and attendant felony-firearm charges. *Beck*, 504 Mich at 610. Even so, the sentencing court greatly increased the defendant's sentence from the recommended minimum guidelines range based on "its finding by a preponderance of the evidence that the defendant committed the murder of which the jury acquitted him." *Id*. Our Supreme Court vacated the defendant's sentence and remanded for resentencing, holding that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id*. at 629.

454 Mich 90, 96; 559 NW2d 299 (1997).  *People v Whalen*, 412 Mich 166, 170; 312 NW2d 638 (1981).

Vacated and remanded for resentencing.  We do not retain jurisdiction.


/s/ Michelle M. Rick
/s/ Kathleen Jansen
/s/ Anica Letica