*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 24, 2020

Plaintiff-Appellee,

v

No. 341726
Wayne Circuit Court
LC No. 17-001509-01-FC

EARVIN JAMIL PARCHMAN,

Defendant-Appellant.

Before: GLEICHER, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, unarmed robbery, MCL 750.530, and stealing or retaining a financial device, MCL 750.157n(1). The trial court sentenced defendant to serve consecutive terms of 25 to 50 years' imprisonment for each CSC-I conviction, and concurrent terms of 10 to 15 years' imprisonment for the unarmed robbery conviction and two to four years' imprisonment for the stealing or retaining a financial device conviction. We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.

## I. FACTS

On January 19, 2017, the victim returned to her apartment and found that the door was unlocked, and defendant and another man were in her kitchen. The victim later testified that she had known defendant for approximately three or four years, and that she owed defendant $60 for drugs. Defendant demanded that she pay him, then ordered her to go into the bedroom where he repeatedly penetrated the victim vaginally and anally with a broom handle. After the attack, defendant took $20 and the victim's Bridge Card[1] from her wallet. He ordered the victim not to call the police.

---

[1] A Bridge card issued by the Michigan Department of Health and Human Services enables a qualified recipient to purchase certain food items and to access cash benefits.

After the two men left her apartment, the victim called the police and met with a police officer at a gas station. The victim gave the officer the broom that defendant used to assault her, having first placed a plastic bag over the top of the broom's handle. A medical examination revealed that the victim had injuries consistent with her description of the attack. Defendant later was identified in surveillance videos from locations where he used the victim's Bridge card.

Defendant was arrested and, after a jury trial, convicted of two counts of first-degree criminal sexual conduct, unarmed robbery, and stealing or retaining a financial device. Defendant was thereafter sentenced to consecutive terms of 25 to 50 years' imprisonment for the CSC-I convictions, and concurrent terms of 10 to 15 years' imprisonment for the unarmed robbery conviction and two to four years' imprisonment for the stealing or retaining a financial device conviction. Defendant now appeals from the judgment of sentence, challenging both his convictions and his sentence.

## II. DISCUSSION

## A. PROSECUTORIAL ERROR

Defendant first contends that his trial was tainted by prosecutorial misconduct because during his closing argument the prosecutor mischaracterized the DNA evidence presented at trial. We disagree.

Initially, we note that this challenge is unpreserved because defendant did not object to the prosecutor's comments during closing argument concerning the DNA evidence. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011) (to preserve a claim of prosecutorial error for appellate review, a defendant must timely and specifically object below unless the error could not have been cured with an objection). We review an unpreserved claim of prosecutorial error for plain error affecting the defendant's substantial rights, *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016), which requires a showing of prejudice, meaning that the error affected the outcome of the lower court proceedings. *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015). Under the plain error rule, reversal is not warranted unless the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or reputation of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Prosecutors are typically afforded great latitude during closing argument, and generally are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). A prosecutor commits error, however, when he or she abandons the responsibility to seek justice and thereby denies the defendant a fair and impartial trial. *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). This Court considers claims of prosecutorial error case-by-case, and the prosecutor's remarks must be considered in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We also consider that jurors are presumed to follow their instructions and that jury instructions are presumed to cure most errors. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

In this case, a forensic scientist testified that she performed DNA processing on swabs taken from the broom that was used to sexually assault the victim, and that she tested a "broom

handle swab" and a "broom tip swab." The DNA from the swabs was compared against DNA samples from defendant and his companion on the day of the assault, as well as from the victim. The forensic scientist explained that the results of the broom handle swab test indicated there was "a three-person mixture" of DNA from that swab, and that it was "at least 8.3 octillion times more likely" that the DNA from the broom handle swab "originated from [the victim] and two unknown contributors than if it originated from three unrelated unknown contributors."

The forensic scientist explained that the software she used to analyze the broom handle swab "look[ed] at the total amount of DNA in the sample" and that the software was able to determine "how much DNA each person may be donating to this mixture." She testified that the software determined that the victim's DNA "contribut[ed] about 92 percent of the mixture" from the broom handle swab. She explained that the remaining DNA mixture was comprised of 5% from a second contributor and 3% from a third contributor. She stated that "the additional contributors [were] being represented at a very low level, a very low amount." In response to the prosecutor's question about whether the low levels would affect her ability to develop or compare a profile, the forensic scientist testified:

> It would. Because it could mean that there's DNA or information missing. It could mean that some of these contributors are only represented as a partial profile or some of their information is detected at a very low amount. So there's not a lot of DNA from the additional donors to compare to.

The forensic scientist also concluded that it was "at least 790,000 times more likely" that the DNA on the broom handle swab originated from three unknown contributors than from defendant and two unrelated, unknown contributors. The scientist explained that her analysis provided "very strong support that" defendant was not a contributor to the DNA profile from the broom handle swab. She clarified that her conclusion was "not an exclusion," but rather demonstrated only that it was more likely that defendant's DNA was not present on the broom handle swab.

During his closing argument, the prosecutor argued that the forensic scientist testified that "92 percent of that DNA they were able to pull from that complex mixture" from the broom handle was from the victim, and that there "was five percent" from a second person and "three percent from another person." The prosecutor argued that the forensic scientist testified that the DNA on the broom handle swab "was low, very low," and that "when it's low, it's difficult to build DNA profiles off of it," and "[e]specially when people are touching it after the fact." The prosecutor further argued:

> We know that there's two other DNA [contributors] there, but it's such a low amount they couldn't figure out whose it was. But they even told you that even though it was very strong support that it wasn't [defendant's DNA] he can't be excluded from it. But as [the scientist] explained it's such a low amount it was overwhelmingly DNA from [the victim] any way on there. It was too difficult to be able to find something more.

Defendant argues that the prosecutor mischaracterized the testimony of the forensic scientist regarding the DNA evidence as "inconclusive" and that the sample was too small to

accurately test, when actually the witness testified that it was extremely unlikely that defendant's DNA was on the broom handle. We disagree. In this case, the prosecutor's arguments were reasonable inferences arising from the scientist's testimony. The prosecutor stated that the scientist's analysis provided strong support that defendant did not contribute DNA to the broom handle swab, but it did not exclude defendant as a potential contributor of DNA to the broom handle swab, which was consistent with the scientist's testimony. Considered in context, the prosecutor's argument did not mischaracterize the testimony of the forensic scientist regarding the DNA evidence.

In addition, any arguable error was cured by the trial court's instructions to the jury that the lawyers' statements and arguments are not evidence and that they should "only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." See *Mahone*, 294 Mich App at 212. We therefore discern in this case no prosecutorial error affecting defendant's substantial rights.

## B. SENTENCING

Defendant next contends that the trial court failed to adequately articulate its rationale for departing upward from defendant's recommended minimum sentence guidelines range and for imposing discretionary consecutive sentences for defendant's CSC-I convictions. Defendant also challenges the accuracy of certain information in the PSIR.

## 1. DEPARTURE FROM THE GUIDELINES

A sentence imposed by a trial court must be proportionate to the seriousness of the circumstances surrounding both the offense and the offender. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Under this standard, the sentencing guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion . . . that trial courts must consult and take into account when sentencing." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015) (quotation marks and citations omitted).

A trial court may impose a sentence that departs from the sentencing guidelines if it determines that the range recommended by the guidelines is disproportionate to the seriousness of the crime. *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019). This Court reviews a departure sentence imposed by a trial court for reasonableness. *Lockridge*, 498 Mich at 392. A sentence is reasonable under *Lockridge* if it comports with the principle of proportionality articulated in *Milbourn*. *Lampe*, 327 Mich App at 126. Thus, the relevant inquiry on appeal is whether the trial court abused its discretion by violating the principle of proportionality and thereby imposed an unreasonable sentence. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). In addition, under the sentencing guidelines the trial court's factual findings must be supported by a preponderance of the evidence, and we review those findings for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A factual finding is clearly erroneous if we are left with a definite and firm conviction that the trial court made a mistake. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

In this case, defendant's recommended minimum sentence range for the CSC-I convictions was 171 to 285 months' imprisonment. The trial court sentenced defendant to serve 25 to 50 years'

imprisonment for each CSC-I conviction, thus departing upward from defendant's recommended minimum sentence guidelines range by 15 months. During sentencing, the trial court stated that the victim's testimony was credible and uncontradicted, and that the crime committed by defendant was heinous. The trial court expressed hope that defendant would use his incarceration to obtain the help he needed through programs offered by the Michigan Department of Corrections. The trial court also stated in a departure memo that it considered the threat posed to the community by defendant's actions and his inclusion of another person in the perpetration of the crime and the making of threats. The trial court, however, did not explain the extent of the departure nor why a 15-month departure sentence is more proportionate than a sentence within the guidelines. A sentence cannot be upheld when the connection between the reasons given by the trial court for the departure and the extent of the departure is unclear. *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). Remand to the trial court therefore is necessary in this case to permit the trial court to further articulate its reasons for departing from the sentencing guidelines or to resentence defendant.

## 2. CONSECUTIVE SENTENCES

Defendant also contends that the trial court erred by failing to articulate its rationale for imposing consecutive sentences for his CSC-I convictions. A trial court may impose consecutive sentences only if specifically authorized by law. *People v Gonzalez*, 256 Mich App 212, 229; 663 NW2d 499 (2003). Defendant was convicted under MCL 750.520b, which authorizes the trial court to impose a term of imprisonment as punishment for CSC-I to be served consecutively to a term of imprisonment for another criminal offense arising from the same transaction. The trial court's decision to impose consecutive sentences was discretionary, and we review the decision to do so for an abuse of discretion. See *Norfleet*, 317 Mich App at 664. To facilitate our review of the trial court's discretionary action, the trial court was required to articulate the reasons underlying its decision to impose consecutive sentences. *Id*. Although the trial court in this case stated its considerations for departing from the sentencing guidelines when sentencing defendant, it did not articulate its rationale for the imposition of consecutive sentences. Indeed, it appeared to do so almost as an afterthought. Remand is therefore necessary for the trial court to articulate the reasons underlying its decision to impose consecutive sentences or to resentence defendant.

## 3. VICTIM IMPACT STATEMENT

Defendant also argues that a remand to the trial court is necessary to determine the accuracy of the information contained in his presentence investigation report (PSIR), specifically information included in the victim impact statement regarding uncharged conduct. A defendant is entitled to be sentenced on the basis of accurate information and accurately scored sentencing guidelines. *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). A defendant may challenge the accuracy of information contained in the PSIR by raising the challenge at sentencing, in a proper motion for resentencing, or in a proper motion for remand. *People v Brown*, 326 Mich App 185, 198; 926 NW2d 879 (2018). If a trial court relies upon inaccurate information when sentencing a defendant, the defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). In addition, because the Department of Corrections makes critical decisions regarding a defendant's status based on the information contained in the presentence investigation report, it is necessary that the PSIR accurately reflect any determination made by the

sentencing judge regarding the accuracy or relevancy of the information in the report. *People v Uphaus (On Remand)*, 278 Mich App 174, 182; 748 NW2d 899 (2008).

Unchallenged information in the PSIR is presumed to be accurate, and the sentencing judge is entitled to rely on the information unless a defendant raises an effective challenge. *People v Maben*, 313 Mich App 545, 553; 884 NW2d 314 (2015). A defendant who challenges the accuracy of the information in the PSIR has the burden of going forward with an effective challenge. *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). When a defendant challenges the information in the PSIR, the sentencing court may accept the defendant's version of the information, disregard the information, or determine the accuracy of the information. *Maben*, 313 Mich App at 554. When a sentencing court chooses to disregard the challenged information, it must clearly indicate that it did not consider the challenged information in determining the sentence. *Id*. If the sentencing court finds the challenged information to be inaccurate or irrelevant, the court is required to strike that information from the PSIR before sending the report to the Department of Corrections. *Id*.

A victim has the right to make an impact statement concerning the defendant to the probation officer for the officer's use in preparing the presentence investigation report, and to have the statement included in the report. MCL 780.764. Victim impact statements are subjective and often are disputed by defendants, but those factors alone do not warrant exclusion of the statements from the PSIR. *Lampe*, 327 Mich App at 124. Rather, a trial court is permitted to consider facts concerning uncharged offenses, pending charges, and acquittals, but the defendant must be afforded the opportunity to challenge the information and, if challenged, the information must be substantiated by a preponderance of the evidence. *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007). A trial court is not required to omit a victim's subjective statements about the impact of a defendant's crime merely because a defendant challenges those statements, but a victim-impact statement that goes beyond describing the impact of the crime and includes information such as factual allegations of uncharged crimes is subject to challenge by the defendant. *Maben*, 313 Mich App at 555.

In this case, the victim made a victim impact statement that was included in defendant's PSIR in which the victim reported that she had previously seen defendant "assault a man with cancer over a $100 debt and beat a woman with a hammer," and that, after defendant's offense against the victim occurred, the victim was "contacted by several women in the community" who told the victim that defendant "either sexually or physically assaulted them over a drug debt." During sentencing, the victim made a similar statement to the trial court.

At sentencing, defendant did not challenge the accuracy of the PSIR. The prosecution contends that defendant not only failed to preserve this issue by failing to object to the accuracy of the PSIR at sentencing, but also waived any challenge to the accuracy of the PSIR by affirming at sentencing that the PSIR was accurate. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). When a party waives a challenge, the alleged error is not merely unpreserved, but rather is extinguished; a defendant who waives his or her rights therefore is precluded from thereafter seeking appellate review of a claimed deprivation of those rights. *Id*. However, our Supreme Court has explained that waiver

[D]iffers from forfeiture, which has been explained as the failure to make the timely assertion of a right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error. Mere forfeiture, on the other hand, does not extinguish an error." [*Carter*, 462 Mich at 215 (quotation marks and citations omitted).]

In this case, the trial court at sentencing inquired whether there were any "additions, deletions, or corrections" to the PSIR. Defense trial counsel responded: "Our corrections – our request for corrections would be as it relates to the guidelines, your Honor." The trial court then asked: "Okay. So everything else in the Pre-Sentencing Report is okay?" Defense trial counsel responded "Yes, your Honor." Defendant thereafter filed a motion to remand in this Court, wherein he argued that his PSIR contained inaccurate information and that he was entitled to resentencing if the trial court relied upon the inaccurate information during sentencing.

In *People v McChester*, 310 Mich App 354, 357; 873 NW2d 646 (2015), this Court held that the defendant in that case had not waived his right to challenge any scoring errors when the trial court inquired whether there were any additions or corrections to the scoring of the offense variables and defense counsel responded: "No, your Honor," but instead had only forfeited his challenge. In this case, we similarly conclude that defense counsel's statement at sentencing that she had no challenges to the accuracy of the information in the PSIR was at most a failure to assert any challenges, and did not constitute a waiver. Because defendant thereafter raised the challenge in a motion to remand, the challenge is preserved. See *Brown*, 326 Mich App at 198.

However, the record before this Court is insufficient to determine the accuracy of the victim impact statement, and the record does not reveal whether and to what the extent the trial court relied upon the information in the victim impact statement. Remand to the trial court therefore is necessary for the trial court to determine the accuracy of the information, to indicate whether it relied upon the challenged information when it sentenced defendant, or to resentence defendant if the trial court determines that it relied upon inaccurate information when sentencing defendant.

## C. INEFFECTIVE ASSISTANCE

In his pro se brief filed pursuant to Administrative Order No. 2004-6, Standard 4, defendant contends that he was denied the effective assistance of counsel during trial. We disagree.

The right to counsel is guaranteed by both the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, §20, and includes the right to the effective assistance of counsel. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Whether a defendant was deprived of effective assistance of counsel is a mixed question of fact and law, *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012), and is an objective standard that requires us to determine whether the acts or omissions by counsel in question were outside the wide range of professionally competent assistance. *Vaughn*, 491 Mich at 669.

To establish a claim of ineffective assistance of counsel, the defendant must demonstrate "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Prejudice in this context means "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). This Court presumes that defense counsel provided effective assistance, and the burden upon the defendant to prove that counsel was ineffective is a heavy one. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). To demonstrate that defense counsel's performance was objectively unreasonable, the defendant must overcome the strong presumption that defense counsel's decisions constituted sound trial strategy.

When a defendant claims ineffective assistance of counsel, he or she has the burden of establishing the factual predicate of the claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Here, defendant's underlying assertion is that defense counsel at trial was ineffective because she failed to make an opening statement at trial, did not impeach the victim during her testimony, did not call an expert witness to testify regarding the DNA evidence, and did not call police witnesses to testify that the victim had a history of making false reports.[2]

With regard to the opening statement, defendant characterizes his trial counsel's decision to reserve her opening statement as "sitting idly by" and as proof that she did not present a defense on his behalf. We disagree. The decision to make an opening statement is a matter of trial strategy, *People v Odom*, 276 Mich App 407, 416; 740 NW2d 557 (2007), and rarely, if ever, is the basis for a successful claim of ineffective assistance of counsel. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). In this case, during trial, defendant's trial counsel reserved her opening statement. Subsequently, defendant elected to not testify and the defense rested. Defendant's trial counsel made a subjective judgment to reserve her opening statement, and although defendant asserts that her judgment was incorrect, he has not overcome the strong presumption that counsel's decision did not fall below an objective standard of reasonableness.

Defendant next contends that his counsel at trial did not impeach the victim during her testimony by examining her about her drug use, criminal history, and previous false reports to the police. Counsel may provide ineffective assistance of counsel if he or she unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant. *Lane*, 308 Mich App at 68. During trial, the victim testified that in either 2009 or 2010, she "falsified a prescription" and she confirmed that she was "convicted of a crime of theft or dishonesty" as a result, and also confirmed that previously she had been convicted of filing a false police report. Defendant's trial counsel then cross-examined the victim regarding the circumstances of her previous convictions, during which the victim admitted that she lied during both offenses. The record thus does not support defendant's assertion that his counsel failed to impeach the victim regarding her criminal history.

---

[2] Defendant also contends that his counsel at trial was ineffective because she did not object during sentencing to the victim's statements about other uncharged conduct by defendant nor call as witnesses the people referred to in the victim's statement. We have already concluded, however, that the question of whether this information was considered during sentencing should be addressed by the trial court on remand.

Defendant also contends that his trial counsel was ineffective because she failed to retain an expert witness to testify regarding the DNA evidence presented during trial to "bolster" his defense. An attorney's decision to retain an expert witness is a matter of trial strategy. *Payne*, 285 Mich App at 190. Failure to call a witness constitutes ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *Id.* Here, the forensic scientist called by the prosecution testified that the DNA testing indicated that there was strong support for a finding that defendant's DNA was *not* present in a swab taken from the broom's handle. Defendant does not identify what sort of testimony an additional expert witness would have provided or how that testimony would have bolstered his defense. Because the record does not indicate that additional testimony from a separate expert witness would have benefited defendant, he failed to overcome the strong presumption that his trial counsel employed sound trial strategy when she opted to not retain an expert witness on DNA evidence.

Defendant next argues that his trial counsel was ineffective because she did not call police witnesses to testify that the victim had a history of making false reports. However, because the victim admitted to her previous convictions during trial, there was no need for defendant's trial counsel to call additional witnesses regarding the victim's previous criminal convictions. This Court will not second-guess counsel on matters of trial strategy, *People v Rosa*, 322 Mich App 726, 742; 913 NW2d 396 (2018), and defendant in this case has not overcome the presumption that counsel's decision not to call these police officers was reasonable, nor has he demonstrated that the decision deprived him of a substantial defense. See *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (the failure to call witnesses only constitutes ineffective assistance of counsel if it deprived the defendant of a substantial defense). And while defendant also argues generally that his trial counsel failed to mount a defense on his behalf, trial counsel did, in fact, cross-examine the prosecution's witnesses, move for a directed verdict, and make a closing argument on his behalf. We conclude defendant failed to meet his burden that his trial counsel failed to provide him with effective assistance.

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Anica Letica