*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAMUEL CORNELIUS CURTIS,

        Defendant-Appellant.

UNPUBLISHED
August 17, 2023

Nos. 360976; 360978
Berrien Circuit Court
LC Nos. 2019-002067-FH; 2020-
000090-FH

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Defendant was convicted by a jury of five counts of second-degree criminal sexual conduct (CSC-II) (victim between 13 and 16, related by blood or affinity), MCL 750.520c; five counts of fourth-degree criminal sexual conduct (CSC-IV) (victim between 13 and 16, actor at least five years older than victim), MCL 750.520e; and one count of assault with intent to commit criminal sexual conduct, MCL 750.520g. The trial court sentenced defendant to concurrent prison sentences of 86 to 180 months for the CSC-II convictions, 16 to 24 months for the CSC-IV convictions, and 24 to 60 months for the conviction of assault with intent to commit criminal sexual conduct.

In these consolidated appeals,[1] defendant appeals of right, arguing that the evidence was insufficient to convict him of CSC-II because he was not related to the victims by blood or affinity, that convicting him of CSC-II and CSC-IV for the same contact violated the prohibition against double jeopardy, that the jury should have been given a specific unanimity instruction, and that the trial court erred by excluding his expert witness's testimony about the suggestive nature of the forensic interviews of the victims. The prosecution concedes that two CSC-II convictions should be reversed on grounds that defendant was not related by affinity to the victims at the time that the

---

[1] *People v Curtis*, unpublished order of the Court of Appeals, entered May 4, 2022 (Docket Nos. 360976 and 360978).

sexual conduct occurred.[2]  Accordingly, we reverse these two counts of CSC-II, and, for the reasons set forth in this opinion, affirm defendant's remaining convictions and sentences.

## I. BACKGROUND

As previously alluded to, this matter involves three minor children, TM, CB, and GP; TM and CB were half siblings of defendant's wife.  All three minor children alleged at different times that defendant touched them inappropriately.  TM testified that defendant used his hand to rub TM's penis over TM's clothes and to rub his buttocks, but that defendant's hands never went inside his clothes.  TM testified that he and defendant used to play fight and that defendant would sometimes grab him in the crotch area to pick him up.  TM said that he did not think much of it at the time.  Once, after TM went to sleep on defendant's bed after playing video games, TM felt defendant rubbing his crotch with his hand over his clothes; TM rolled over, and the rubbing stopped.

According to CB, defendant touched and rubbed his inner thigh and rubbed CB's penis on top of CB's clothes.  GP reported that defendant rubbed his penis over and under his clothes.

The victims disclosed the sexual contact at different times, and all three participated in forensic interviews at the Children's Advocacy Center of Southwest Michigan (CAC).  Defendant was arrested in July 2019 and ultimately charged with three counts of CSC-II (relationship) on the basis of the alleged sexual contact with TM.  In January 2020, defendant was charged with two counts of CSC-II (relationship) for sexually touching CB, and one count of assault with intent to commit CSC-II for conduct involving GP.  The trial court consolidated the two cases for trial, denied defendant's motion to dismiss the charges on grounds that there were no records of the victims' paternity, and granted the prosecution's motion to amend the charges in each case to add counts of CSC-IV (victim 13 to 16 years old) as alternatives to each count of CSC-II.  The prosecution contended that the facts would show that defendant's wife, TM, and CB shared the same biological father and that this would be sufficient to establish that defendant was related to the victims within the fourth degree of affinity.  However, should there be an issue with affinity, the alternative counts would allow the jury to determine if the facts adduced at trial established affinity or if CSC-IV was the appropriate charge.

Important to this appeal, the defense called David W. Thompson, Ph.D., to testify about his analysis of the CAC interviews of the minor children.  Defense counsel first sought to admit transcripts of the interviews into evidence.  The trial court disallowed the transcripts on the ground that their content was inadmissible hearsay and concluded that it would allow Dr. Thompson to testify generally about his interpretation of proper forensic interviewing, but he could not reference the specific videos or transcripts of the minor childrens' forensic interviews.  During his direct examination of Dr. Thompson, defense counsel sought to admit into evidence a three-page document that used a coding system to show alleged deficiencies in the forensic interview.  The trial court excluded the document on grounds that it fell under its previous hearsay ruling. Defense counsel then attempted to have Dr. Thompson recall the details of his analysis by use of his three-

---

[2] The convictions are Count III in LC No. 2019-002067-FH (Docket No. 360976), and Count II in LC No. 2020-000090-FH (Docket No. 360978).

page analysis if necessary to refresh his memory, but the trial court sustained the prosecution's objection. Defense counsel then tried to elicit testimony from Dr. Thompson about his recollection of the inconsistencies in the minor childrens' interview responses, but the trial court again sustained the prosecution's objection based on the court's ruling that the specifics of the interviews were inadmissible.

Testifying on his own behalf, defendant denied ever touching the minor children for sexual purposes. The jury convicted defendant as indicated. Defendant now appeals.

## II. ANALYSIS

Defendant first argues that the evidence was insufficient to conviction him for CSC-II on the basis of affinity because, under Michigan law, there was no affinity relationship between him and TM and CB.

This Court reviews a challenge to the sufficiency of the evidence by reviewing the evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011); *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009); see also *Jackson v Virginia*, 443 US 307, 324; 99 S Ct 2781; 61 L Ed 2d 560 (1979). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Conflicts in the evidence are resolved in favor of the prosecution." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (quotation marks and citation omitted). In addition, "this Court should defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Id*.

As an initial matter, the prosecution concedes, and we agree, that two CSC-II charges, one based on defendant's sexual touching of TM at a house on Ogden Street and one based on defendant's sexual touching of CB at the home of defendant's father, should be reversed. Both incidents happened after the death of defendant's wife which severed defendant's affinity relationship with the victims. Defendant's affinity relationship with TM and CB was predicated on defendant's marriage to the victims' sister, and death terminated that marriage. See *Tiedman v Tiedman*, 400 Mich 571, 576; 255 NW2d 632 (1977) (indicating that marriage terminates upon the death of a spouse).

Defendant was convicted of violating MCL 750.520c(1)(b)(*ii*), which provides that a person is guilty of CSC-II if the victim is "at least 13 but less than 16 years of age" and the perpetrator "is related by blood or affinity to the fourth degree to the victim." The parties agree that "affinity" "is the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other." *Bliss v Caille Bros Co*, 149 Mich 601, 608; 113 NW 317 (1907). Evidence adduced at trial established that defendant's wife, TM, and CB had the same biological father and were half siblings. There is no dispute that defendant wed the sister of TM and CB in May 2014. Therefore, under *Bliss*'s definition of affinity, defendant was related by affinity to his wife's half brothers, TM and CB.

Defendant argues on appeal that an affinity relationship did not exist between him and the victims because the termination of the parental rights of the father of defendant's wife, TM, and CB destroyed the natural family relationship and rendered their father a "legal stranger" to them. Our Supreme Court has recently indicated, however, that legal changes do not affect the genetic makeup of a child or a parent. See *People v Moss*, 509 Mich 253, 264; 984 NW2d 23 (2022). Termination of the parental rights of their father changed the father's legal relationship to defendant's wife and her half siblings, TM and CB, but it did not change the fact that the three were related to each other by blood. Therefore, when defendant married the victims' sister, he became related by affinity to her blood relatives, i.e., TM and CB. See *Bliss*, 149 Mich at 608. Accordingly, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was related by affinity to TM and CB and, therefore, to convict defendant of three counts of CSC-II, as charged, for defendant's sexual contact with TM at the house on Bishop and the hotel, and for defendant's sexual contact with CB at the house on Bishop.

Defendant next contends that charging and convicting him of CSC-II and CSC-IV for the same conduct violated the principles of double jeopardy by punishing him with multiple convictions for a single act of criminal sexual conduct.

Because defendant did not raise this double-jeopardy challenge in the trial court, this issue is not preserved. See *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008) (indicating that a double jeopardy challenged raised for the first time on appeal is unpreserved for appellate review). This Court reviews unpreserved claims of constitutional error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To prevail under plain-error review, defendants must establish that error occurred, that the error was obvious, and that it affected their substantial rights. *Id*. An error affected substantial rights if it "affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks, citation, and alteration omitted).

In *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004), our Supreme Court explained the protections against double jeopardy as follows:

> The United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense. The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.

The present issue involves the third protection.

Whether the prohibition against multiple punishments for the same offense has been violated depends on the elements of the charged offenses. "[I]f each offense 'requires proof of a fact which the other does not' then there is no violation of double jeopardy." *People v Garland*, 286 Mich App 1; 777 NW2d 732 (2009), quoting *Blockburger v United States*, 284 US 299; 52 S Ct 180; L Ed 306 (1932).

-4-

Defendant was convicted of violating MCL 750.520c(1)(b) (CSC-II), and MCL 750.520e(1)(a) (CSC-IV), for each incident of sexual touching that occurred before his wife's death. MCL 750.520c(1)(b) provides in relevant part:

> (1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
>
> * * *
>
> (b) That other person is at least 13 but less than 16 years of age and any of the following:
>
> * * *
>
> (*ii*) The actor is related by blood or affinity to the fourth degree to the victim.

MCL 750.520e(1)(a) provides as follows:

> (1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:
>
> (a) That other person is at least 13 years of age but less than 16 years of age, and the actor is 5 or more years older than that other person.

As the foregoing shows, CSC-II and CSC-IV are codified as separate statutes. Contrary to defendant's argument on appeal, this is not a case of defendant being charged multiple times under the same statute for different aggravating factors. In *People v Johnson*, 406 Mich 320, 323; 279 NW2d 534 (1979), our Supreme Court held that, under the CSC-I statute, a single sexual penetration, accompanied by more than one aggravating factor, cannot result in multiple CSC-I charges, convictions, and sentences. For example, if a single sexual penetration involved the use of a weapon, force, and personal injury, the perpetrator could not be charged with three counts of CSC-I. See *id*. at 324-325. In the present case, defendant was not charged under one statute on the basis of multiple aggravating factors; he was charged under two separate statutes.

With respect to the specific statutory elements of the two crimes of which defendant was convicted, both MCL 750.520c(1)(b) and MCL 750.520e(1)(a) require the victim to be "at least 13 but less than 16 years of age." However, MCL 750.520c(1)(b) also requires the actor to be related to the victim by blood or affinity to the fourth degree, whereas MCL 750.520e(1)(a) requires the actor to be "5 or more years older than the other person." Each statute requires an element that the other does not. A defendant could violate MCL 750.520c(1)(b) without violating MCL 750.520e(1)(b), and vice versa. Therefore, under the *Blockburger* test, "because each offense contains an element that the other does not, [CSC-II] and [CSC-IV] are separate offenses for which defendant was properly convicted and sentenced, without violating defendant's double jeopardy protection against multiple punishments." *Garland*, 286 Mich App at 6. Accordingly,

defendant has failed to show plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

Defendant next contends that the trial court erred by not giving a specific unanimity instruction and that the general unanimity instruction that the trial court allowed the jury to cobble together a verdict out of various charges.

Because defendant did not object to the trial court's jury instruction below, this issue is not preserved for appellate review. See MCR 2.512(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499. This Court review unpreserved claims of instructional error for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The right to a trial by jury that is guaranteed by the Sixth Amendment of the United States Constitution[3] "includes a requirement that the verdict should be unanimous." *Ramos v Louisiana*, ___ US ___, ___; 140 S Ct 1390, 1396-1397; 206 L Ed 2d 583 (2020). The Michigan Constitution also guarantees criminal defendants a unanimous jury verdict. *People v Gadomski*, 232 Mich App 24, 30; 592 NW2d 75 (1998), citing Const 1963, art 1, § 14. "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994).

> [I]f alternative acts allegedly committed by defendant are presented by the state as evidence of the *actus reus* element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct ([when] the acts themselves are conceptually distinct or [when] either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. [*Id*. at 524.]

A general unanimity instruction sufficed in *Cooks* because, although the defendant was charged with one count of criminal sexual conduct and the victim testified about three separate incidents, the incidents were anal penetrations that occurred in the same house over an unspecified three-day period while only the victim and the defendant were present. *Id*. at 528. The *Cooks* Court deemed the multiple acts alleged by the prosecutor to be "tantamount to a continuous course of conduct." *Id*. at 529. Further, the defendant did not offer specific defenses to any of the allegations; instead, the defendant denied the existence of any inappropriate behavior. *Id*. On these facts, the sole task of the jury, therefore, was to determine the credibility of the victim about the pattern of alleged conduct. *Id*.

The facts of the *Cooks* case are distinguishable from the facts in *People v Yarger*, 193 Mich App 532; 485 NW2d 119 (1992), wherein this Court concluded that the trial court erred by not providing a specific unanimity instruction. The defendant in *Yarger* was charged with, and

---

[3] US Const, Am VI.

convicted of, one count of CSC-III (victim at least 13 years of age and under 16 years of age). The prosecution presented evidence of distinct types of penetration through the victim's testimony that she performed fellatio on the defendant and that the defendant penetrated her vagina with his penis. The trial court instructed the jury that its verdict had to be unanimous and that finding beyond a reasonable doubt that either fellatio or intercourse had occurred would satisfy the element of penetration required to prove CSC-III. *Id*. at 534-535. On appeal, this Court stated that the trial court erred by not instructing the jury that it "must unanimously agree on *which* act was proven beyond a reasonable doubt." *Id*. at 537. The general unanimity instruction that the trial court gave allowed for the possibility of a verdict that was not unanimous: six jurors could have been convinced beyond a reasonable doubt that fellatio occurred, while the other six could have believed that vaginal intercourse, but not fellatio, had occurred. *Id*. Because the jury instructions were insufficient to ensure a unanimous verdict, this Court reversed the defendant's conviction. *Id*.

The present case more closely resembles *Cooks* than *Yarger*. The evidence that the prosecution offered was materially the same for each incident and each victim. Each minor child testified that defendant intentionally touched or rubbed their penises over their clothes, and CB testified that defendant touched and rubbed his inner thigh. There were no temporal times posts, and the sexual touching occurred over a longer period than did the sexual abuse in *Cooks*. However, the prosecutor elicited testimony from the victims that linked each incident of sexual touching to a specific location, i.e., the Bishop house, the hotel, the Ogden house, and at the home of defendant's father. Further, as in *Cooks*, defendant did not offer specific defenses to any of the allegations; rather, he denied that he had ever touched the boys for a sexual purpose. Lastly, beyond asserting that a specific unanimity instruction was required because the incidents of sexual contact were not temporally or geographically proximate, defendant has not shown how the jury potentially could have reached a verdict that was not unanimous, nor pointed to any juror confusion. On these facts, defendant has failed to show that the absence of a specific unanimity instruction constituted plain error affecting his substantial rights. See *Carines*, 460 Mich at 774.

Next, defendant contends that the trial court erred by not allowing his expert witness, Dr. David Thompson, to testify about the video of the CAC's forensic interview and about his concerns with the interviewers' questions. Defendant has not shown that he is entitled to relief on this issue.

Because defendant did not make an offer of proof at trial regarding the substance of Dr. Thompson's excluded testimony, MRE 103(a)(2), we are unable to conclude that the exclusion of Dr. Thompson's testimony affected defendant's substantial rights. MRE 103(a). *People v Hampton*, 237 Mich App 143, 154; 603 NW2d 270 (1999). "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2018).

As previously indicated, defendant did not make an offer of proof about the substance of Dr. Thompson's testimony. The trial transcript indicates that the witness distilled his analysis into two documents: a graph of consistencies and inconsistencies of the minor childrens' responses during the interviews and a "query count" that used a coding system to "evaluate each utterance by the interviewer during the substantive portion" of the forensic interviews. Hence, the actual substance of Dr. Thompson's analysis cannot be determined from the transcript. One of the purposes of an offer of proof is that it allows this Court to determine whether the trial court's

exclusion of evidence affected the defendant's substantive rights.  See *Hampton*, 237 Mich App at 154.  However, as previously explained, defendant's failure to make an offer of proof to the trial court does not allow this Court to determine whether exclusion of Dr. Thompson's testimony affected defendant's substantial rights.  Because defendant has not shown that the trial court's exclusion of the testimony affected his substantial rights, he has not shown that he is entitled to relieve under plain-error review.  See *Carines*, 460 Mich at 763.

For the foregoing reasons, we reverse defendant's convictions for Count 3 in LC No. 2019-002067-FH (Docket No. 360976) and for Count 2 in LC No. 2020-000090-FH (Docket No. 360978), but affirm defendant's remaining convictions and sentences.

Reversed in part and affirmed in part.  We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel