*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON JOSEPH SMITH,

        Defendant-Appellant.

UNPUBLISHED
June 24, 2026
10:12 AM

No. 371483
Macomb Circuit Court
LC No. 2022-002232-FH

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of second-degree criminal sexual conduct (CSC-II) (person under 13), MCL 750.520c(1)(a), and assault with intent to commit CSC-II (AWICSC-II), MCL 750.520g(2). The trial court sentenced defendant to concurrent prison terms of 2 to 15 years for the CSC-II conviction and 2 to 5 years for the AWICSC-II conviction. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

Defendant's convictions arise from the assault of his stepdaughter, AB,[1] between 2015 and 2016 when she was 11 or 12 years old. Defendant generally picked up AB from school and the two of them would be alone for several hours while AB's mother was at work. On the date of the assault, AB asked defendant for a back rub while they were home alone watching television together.[2] As defendant was rubbing AB's back underneath her clothing, his hands moved to her

---

[1] AB was diagnosed with Autism Spectrum Disorder through a school evaluation in the fifth grade, which necessitated special education because of the impact it had on her social skills. However, AB's academic skills were strong.

[2] AB suffers from scoliosis, which causes her back pain. She testified that her back was either itchy or hurting on the date of the incident. She had asked defendant for back rubs on prior occasions and "thought nothing of it as a kid."

breasts and he massaged both her breasts.[3] Defendant then moved both his hands down into AB's pants, underneath her underwear, and massaged her "crotch region." AB felt defendant's hands touch her pubic hairs and skin as he massaged her groin or "crotch region" but stated that he did not touch her genitals or vagina. AB was scared and felt "stuck rooted in place" as defendant assaulted her. She eventually went to her bedroom, shut the door, and tried to put the incident out of her mind.

AB coped by avoiding defendant and trying to forget about the incident. She isolated herself in her bedroom. She was concerned that disclosing the incident would ruin defendant's life, affect her mother's marriage, and complicate all three of their lives. In January 2021, AB disclosed the assault to her mother. AB's mother confronted defendant. He denied the accusations. AB's mother ordered defendant to leave the family home and he complied. The incident was not reported to anyone else at that time.

In the fall of 2021, AB disclosed the assault to a school psychologist, Lisa Kepler, who, as a mandated reporter, reported the assault to Children's Protective Services (CPS). CPS referred the matter to the Saint Clair Shores Police Department for investigation. During the forensic interview, AB disclosed details of the incident that formed the basis of the charges against defendant.

Following AB's forensic interview, Saint Clair Shores Police Detective Brock Bowen interviewed defendant.[4] When confronted with the accusations, defendant stated, "I don't think it happened, but I don't know." Defendant admitted that he had likely consumed "a few beers." He explained that he generally consumed four to six beers daily after work "to work up a little buzz." Defendant rationalized that he may have fallen asleep on the couch and when he woke up he may have thought AB was his wife. But he conceded, "[T]here's no way I could've thought it was her." Defendant stated, "Honestly, it is my biggest fear is [sic] that [AB's] telling the truth." Defendant explained that the actions described by AB fit with his actions towards his wife when she came home from work: "I'd give her a back rub and try to get my hand down her pants." His wife would generally stop him, but he recalled a time that she did not stop him and she was not wearing a bra. He conceded that "it was probably [AB]."

Defendant also provided a written statement to Detective Bowen:[5]

My biggest fear is that [AB] is not lying. She is saying things that I often did to her mother. Sometimes I fell asleep on the couch waiting for her mother to come home from work, so I could give her a back rub and sometimes a foot rub. Often I would try to put my hand down her mother's pants after a back rub. She would say no she needs a shower first. But after a shower we would sometimes have sex on the

---

[3] AB could not recall whether she was wearing a bra on the date of the incident but she clearly remembered that defendant's hands touched her skin directly.

[4] A redacted copy of the video recording of the interview was admitted into evidence and played at trial.

[5] Defendant's handwritten statement was admitted into evidence and read into the record at trial.

couch. Even though I said we should move into the bedroom first she often insisted it be on the couch. Oftentimes she never remembered it in the morning.

I made a mistake and thought [AB] was [her mother].[6]

Defendant was charged with one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a),[7] one count of CSC-II (person under 13), MCL 750.520c(1)(a), and one count of AWICSC-II, MCL 750.520g(2). Following the close of the prosecution's proofs at trial, defendant moved for a directed verdict arguing that there was no evidence of sexual arousal or gratification. The trial court denied the motion. Defendant was convicted of both charges and sentenced as stated. Defendant now appeals.

II. CSC-II

Defendant argues that the trial court erred by denying his motion for directed verdict because the evidence did not establish that his touching of AB was for the purpose of sexual arousal or gratification as required for a CSC-II conviction. Further, defendant argues that the evidence was insufficient to support his conviction of CSC-II. We disagree.

We review de novo the denial of a motion for a directed verdict. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). Challenges to the sufficiency of the evidence are also reviewed de novo. *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021).

The same standard for reviewing the sufficiency of the evidence applies to a motion for a directed verdict. *People v Thurmond*, 348 Mich App 715, 722; 20 NW3d 311 (2023). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (cleaned up). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. (cleaned up). Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). Further, "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g." MCL 750.520h.

To be guilty of CSC-II, defendant must have engaged in sexual contact with AB when she was under 13 years old. *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520c(1)(a). As relevant here, " '[s]exual contact' includes the intentional touching of the victim's . . . intimate parts or the intentional touching of the clothing covering the immediate

---

[6] Detective Bowen testified that defendant voluntarily added the last sentence after Detective Bowen commented that the statement was different than what they had talked about during the interview.

[7] The prosecution dismissed the CSC-IV charges before trial.

area of the victim's . . . intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose[.]" MCL 750.520a(q). "Intimate parts" is statutorily defined to "include[ ] the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

The only element challenged by defendant is the element of sexual arousal or gratification. Defendant maintains that there was no evidence that his actions were directed toward AB for the purpose of sexual arousal or gratification because he thought he was touching his wife, not AB. We disagree. AB testified that while defendant was giving her a back rub, he used both hands to massage her breasts under her clothing, put his hands down the front of her underwear, and massaged her crotch region, which reasonably could be construed as being for the purpose of sexual arousal or gratification. See *People v Duenaz*, 148 Mich App 60, 65; 384 NW2d 79 (1986) (holding that evidence that the defendant intentionally touched an intimate body part in addition to evidence of the manner of the touch was sufficient evidence that the act could be reasonably construed as being for the purpose of sexual arousal or gratification). Additionally, defendant admitted in his statement to the police that this conduct was consistent with his foreplay with his wife during intimate relations. Because defendant's contact with AB was consistent with his sexual foreplay with his wife, the jury was permitted to make reasonable inferences that it was for the purpose of sexual arousal or gratification. See *Blevins*, 314 Mich App at 357. While defendant claimed that he made a mistake and thought he was touching his wife, he recalled that she was not wearing a bra and conceded that "it was probably [AB]." Evidence produced at trial established that AB was a young child between the ages of 11 and 12, going through puberty, and developing breasts at the time of incident. Defendant conceded that AB was not same size as her mother at that time. It was the jury's prerogative to determine whether defendant's explanation was credible. See *People v Solloway*, 316 Mich App 174, 182; 891 NW2d 255 (2016) ("[W]itness credibility is a question for the fact-finder, and this Court does not interfere with the fact-finder's role."). Viewed in the light most favorable to the prosecution, there was sufficient evidence to establish that defendant's massaging of AB's breasts and crotch region was for the purpose of sexual arousal or gratification beyond a reasonable doubt. The trial court did not err by denying defendant's motion for directed verdict and the evidence presented at trial was sufficient to sustain defendant's conviction of CSC-II.

## III. SENTENCING

Next, defendant argues that his within-guidelines sentence for CSC-II was unreasonable and disproportionate. We disagree.

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Id*., citing *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "[W]ithin-guidelines sentences are to be reviewed for reasonableness[.]" *People v Posey*, 512

Mich 317, 359; 1 NW3d 101 (2023) (Opinion by BOLDEN, J.).[8] "[T]he key to reasonableness review is whether the sentence is proportionate." *Id.* A trial court abuses its discretion if the sentence imposed is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (cleaned up). A proportionate sentence considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, 510 Mich at 183. But "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id.* at 183-184.

"When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, 512 Mich at 360. To overcome that presumption, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id.* at 359. In order to overcome the presumptive proportionality of a within-guidelines sentence, a defendant must "present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (cleaned up); see also *Milbourn*, 435 Mich at 636 ("Conceivably, even a sentence within the sentencing guidelines could be an abuse of discretion in unusual circumstances."). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (cleaned up).

In this case, it is undisputed that the applicable guidelines range was 12 to 24 months, and the trial court sentenced defendant to a minimum term of two years, which is within the guidelines range. Therefore, defendant's sentence is presumptively proportionate. *Posey*, 512 Mich at 360. Defendant argues that his sentence was unreasonable because (1) he did not have a criminal record; (2) he was not a sexual predator; and (3) this was an "isolated incident." Under the sentencing guidelines, the trial court is required to score both offense and prior record variables to determine the appropriate sentence range. *Babcock*, 469 Mich at 263. Offense variables consider the nature and severity of the sentencing offense and prior record variables consider the defendant's criminal history. *Id.* at 263-264. Thus, whether defendant had a prior criminal record, was a sexual predator (i.e., had prior sex offenses), or had assaulted AB on more than one occasion are factors reflected in the scoring of the guidelines. And defendant does not argue that the sentencing guidelines were not accurately scored.

The sentencing judge also presided over defendant's trial and thus was aware of the facts presented at trial. During sentencing, the trial court stated, "[T]he mother trusted you, the child trusted you, you were a family and you violated the trust in a despicable way." The trial court also noted that defendant's position as a person of trust was accounted for in the scoring of the offense variables. See MCL 777.40. It was clear from the trial court's statements in support of the sentence that it thoroughly considered the circumstances of the offense, discipline or punishment, defendant's rehabilitative potential, deterrence to others, and protection of the community.

---

[8] While *Posey* was a plurality opinion that is not technically binding, this Court acknowledged that "it [is] prudent to follow the holding in the interest of judicial economy." *People v Purdle (On Remand)*, 350 Mich App 446, 453-454; 32 NW3d 479 (2024).

Although defendant's sentence was on the high-end of his minimum guidelines range, he has not demonstrated that this within-guidelines sentence was unreasonable or disproportionate under the circumstances in this case. See *Posey*, 512 Mich at 357. Defendant is not entitled to resentencing.

## IV. AWICSC-II

Defendant asserts that his conviction of AWICSC-II was not supported by the evidence and the jury instruction given by the trial court for AWICSC-II was incomplete and inaccurate. We disagree.

AWICSC-II requires proof of the following elements: (1) an assault; (2) the specific intent to touch the victim's genital area, groin, inner thigh, buttock, breast, or clothing covering those areas, for the purpose of sexual arousal or sexual gratification; and (3) aggravating circumstances, such as the victim was under 13 years old. MCL 750.520(g)(2); MCL 750.520c(1)(a); MCL 750.520a(f), (q); *People v Evans*, 173 Mich App 631, 634; 434 NW2d 452 (1988); *People v Snell*, 118 Mich App 750, 754-755; 325 NW2d 563 (1982). An assault can occur when there is either an attempt to commit a battery, or there is an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (cleaned up). "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Gonzalez*, 256 Mich App 212, 226; 663 NW2d 499 (2003) (cleaned up). "[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

AB testified that while defendant was giving her a back rub, he used both hands to massage her breasts under her clothing, put his hands down the front of her underwear, and massaged her crotch region. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to conclude that an assault occurred. Based on the same evidence discussed above, a jury could also reasonably infer that defendant specifically intended to touch AB's genital area, groin, inner thigh, buttock, breast, or clothing covering those areas, for the purpose of sexual arousal or sexual gratification. See *Gonzalez*, 256 Mich App at 226; *Evans*, 173 Mich App at 634. AB's age at the time of the incident is not disputed and thus the existence of an aggravating circumstance was established. Viewing the evidence in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational jury to find defendant guilty of AWICSC-II.

Defendant also contends that the jury instruction given by the trial court for AWICSC-II was incomplete and inaccurate. However, after the trial court instructed the jury, defense counsel expressly and explicitly approved the instructions given to the jury. Accordingly, defendant has waived any error. See *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020) ("A party's explicit and express approval of jury instructions as given waives any error and precludes appellate review."). Notwithstanding defendant's waiver, we note that the trial court's instruction on AWICSC-II followed the language of M Crim JI 20.18 verbatim and defendant concedes that a more detailed instruction would have only made his guilt of the offense all the more clear. See MCR 2.512(D)(2) (the Model Criminal Jury Instructions must be used when they (1) are

applicable, (2) accurately state the applicable law, and (3) are requested by a party).[9] Defendant has not demonstrated reversible error on this basis.

## V. DOUBLE JEOPARDY

Finally, defendant maintains that his conviction of AWICSC-II violated double-jeopardy protections because he received multiple punishments for the same offense. We disagree.

We generally review a double-jeopardy claim de novo. See *People v Nutt*, 469 Mich 565, 573; 677 NW2d 1 (2004). But because defendant did not preserve this constitutional issue by raising it at trial, *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008), our review is for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

The Double Jeopardy clause in the United States Constitution states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" US Const, Am V. The Michigan Constitution also includes a double jeopardy provision, which states: "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. The prohibition against double jeopardy includes protecting individuals "against multiple punishments for the same offense." *People v Wafer*, 509 Mich 31, 37-38; 983 NW2d 315 (2022).

"[T]he question of when multiple punishments are constitutionally permissible is a matter of determining what the Legislature intended." *Id*. at 38. In *People v Miller*, 498 Mich 13, 19; 869 NW2d 204 (2015), our Supreme Court set forth a two-part test to assess whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy. First, courts must examine "whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments." *Id*. "If the legislative intent is clear, courts are required to abide by this intent." *Id*. If the legislative intent is unclear, courts apply the "abstract legal elements" test expressed in *People v Ream*, 481 Mich 223, 225-226; 750 NW2d 536 (2008) and *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932) to determine "whether the Legislature intended to classify two offenses as the 'same offense' for double jeopardy purposes." *Miller*, 498 Mich at 19. Under that test, "it is not a violation of double jeopardy to convict a defendant of multiple offenses if 'each of the offenses for which defendant was convicted has an element that the other does not . . . .' " *Id*., quoting *Ream*, 481 Mich at 225-226. See also *Blockburger*, 284 US at 304 (stating when "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not").

CSC-II and AWICSC-II are legally distinct offenses and do not share the same elements. A conviction of CSC-II requires: (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age. MCL 750.520c(1)(a). A conviction for AWICSC-II requires proof of the following elements: (1) an assault; (2) the specific intent to touch the victim's genital area, groin,

---

[9] The record reflects that the parties requested and agreed to the instructions that the trial court gave to the jury.

-7-

inner thigh, buttock, breast, or clothing covering those areas, for the purpose of sexual arousal or sexual gratification; and (3) aggravating circumstances, such as the victim was under 13 years old. MCL 750.520(g)(2); MCL 750.520c(1)(a); MCL 750.520a(f), (q); *Evans*, 173 Mich App at 634; *Snell*, 118 Mich App at 754-755. An assault may be established by showing "that one has attempted an intentional, unconsented, and harmful or offensive touching of a person." *Starks*, 473 Mich at 229. A conviction of CSC-II requires that sexual contact be achieved. MCL 750.520c(1)(a). By contrast, an actual touching is not required to support a conviction of AWICSC-II. See *Snell*, 118 Mich App at 754. And AWICSC-II requires a showing of specific intent, see *Evans*, 173 Mich App at 634, whereas CSC-II does not, see MCL 750.520a(q) (requiring that the "intentional touching *can reasonably be construed as being* for" certain purposes) (emphasis added); *People v Piper*, 223 Mich App 642, 646; 567 NW2d 483 (1997). Because each offense requires proof of at least one element that the other does not, there is no double-jeopardy violation. See *Blockburger*, 284 US at 304; *Miller*, 498 Mich at 19; *Ream*, 481 Mich at 225-226.

We affirm defendant's convictions and sentence.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel